Luis Richard GARCIA,
M.D., Appellant,

v.

Lizalde MARICHALAR, Appellee.

No. 04–05–00344–CV.

Court of Appeals of Texas,
San Antonio.

April 5, 2006.

See also 185 S.W.3d 70.

M. Teresa Garcia, Richard L. Garcia, Jr., San Antonio, for appellant.

Thomas D. Jones, Law Office of Thomas D. Jones, P.C., Kimberly S. Keller, The Keller Group, San Antonio, for appellee.

M. Kenneth Patterson, Patterson & Wagner, L.L.P., George F. Evans, Jr., Evans & Rowe, P.C., San Antonio, for other.

Sitting: CATHERINE STONE, Justice, KAREN ANGELINI, Justice, PHYLIS J. SPEEDLIN, Justice.

Opinion by KAREN ANGELINI, Justice.

This interlocutory appeal arises from a health care liability claim filed by Lizalde Marichalar against Luis Richard Garcia, M.D. Pursuant to section 51.014(a)(9) of the Texas Civil Practice and Remedies Code, Garcia appeals the trial court's May 26, 2005, order denying his motion to dismiss Marichalar's claims with prejudice. Because the trial court erred in denying Garcia's motion to dismiss, we reverse the trial court's judgment and remand the cause to the trial court.

### FACTUAL BACKGROUND

On January 30, 2003, Lizalde Marichalar underwent exploratory surgery triggered by an ectopic pregnancy. For a month after surgery, Marichalar experienced abdominal pain. On February 28, 2003, Marichalar was admitted to an emergency room where it was discovered that she had a foreign object in her body. During surgery, a ten-inch gauze sponge was removed that had been left in her body from the previous surgery.

### PROCEDURAL BACKGROUND

Marichalar filed a medical malpractice suit, naming the following as defendants:

Luis Gaston Prieto, M.D., Luis Alberto Garcia–Arecha, M.D., Luis Richard Garcia, M.D., Gary R. Groce, R.N., Marianna Sanchez, and Christus Santa Rosa Health Care Corporation d/b/a Christus Santa Rosa Healthcare and Hospital. Pursuant to section 74.351 of the Texas Civil Practice and Remedies Code, an expert report was due to be served on each defendant by May 13, 2005. On May 10, 2005, within 120 days of filing her health care liability claim, Marichalar sent her expert report to Garcia; however, that report, which focused on the acts committed by other defendants, did not mention Garcia at all.

Because Garcia was not mentioned in the expert report, he filed a motion to dismiss Marichalar's claims, arguing that because she did not "serve" him with an expert report within 120 days after filing suit, the trial court, pursuant to section 74.351(b), must dismiss her claim with prejudice. Instead, on May 26, 2005, the trial court denied Garcia's motion to dismiss. Challenging this interlocutory order, Garcia filed a notice of appeal, asking that we review the trial court's May 26, 2005, order.

On September 28, 2005, four months after Garcia filed his notice of interlocutory appeal, the trial court dissolved its May 26, 2005, order and entered an order granting Marichalar an extension of time to cure the report. Marichalar then filed a motion to dismiss this interlocutory appeal as moot. In response, Garcia filed a motion requesting that we review the trial court's May 26, 2005, order because under Texas Rule of Appellate Procedure 29.5, the trial court's dissolution of its prior order interfered with or impaired the effectiveness of the relief sought by him on appeal. In an opinion dated November 23, 2005, we held that the trial court had no authority to grant an extension to Marichalar and that by dissolving its prior or-

der and granting an extension, the trial court interfered with or impaired the relief sought by Garcia. *See Garcia v. Marichalar,* 185 S.W.3d 70 (Tex.App.-San Antonio, 2005). We, therefore, granted Garcia's motion to review the trial court's order of May 26, 2005, denied Marichalar's motion to dismiss, and ordered the trial court's order of September 28, 2005, to be vacated.

Both parties then filed their respective briefs on the merits, and this appeal was submitted to the court.

### JURISDICTION

Marichalar in her brief on the merits argues that our prior opinion incorrectly determined that we have jurisdiction over this appeal. *See Garcia v. Marichalar,* 185 S.W.3d 70 (Tex.App.-San Antonio, 2005). We disagree. We have jurisdiction over this appeal for the reasons stated in our opinion of November 23, 2005. *See id.*

### EXPERT REPORT

Garcia argues that the trial court should have dismissed Marichalar's claims against him because she did not serve him with an expert report relating to actions taken by him. Marichalar responds that the expert report she gave Garcia was a good-faith effort to comply with section 74.351 and that alternatively, she was not required to serve an expert report because the doctrine of res ispa loquitur applies.

*A. Statutory Requirements*

Section 74.351 lists the statutory requirements with regard to serving expert reports in health care liability claims. Subsection (a) requires a claimant, not later than the 120th day after the date the original petition was filed, to "serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report, for

each physician or health care provider against whom a liability claim is asserted." TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp.2005). According to subsection (r)(6), an "expert report" is "a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 74.351(r)(6). And, pursuant to subsection (*l*), a trial court "shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good-faith effort to comply with the definition of an expert report in subsection (r)(6)." *Id.* § 74.351(*l*).

## B. *Good–Faith Effort*

Here, Marichalar filed two expert reports: one written by Michelle Byrne, a registered nurse, and one written by Harold J. Miller, an obstetrician-gynecologist. In her report, Michelle Byrne states that nurses Gary R. Groce and Mariana Sanchez deviated from the standard of care because they failed to accurately "implement and document surgical counts" which caused a sponge to be left in Marichalar's body. In his report, Dr. Miller states that Dr. Luis Gaston Prieto, the surgeon, and Dr. Luis Garcia Arecha, the assistant surgeon, deviated from the standard of care because they allowed "the lap sponges not to be counted correctly and then noted in the chart that they were correct." According to Dr. Miller, "Dr. Prieto and Dr. Garcia Arecha and the nurses Sanchez and Groce failed to meet the standard of care by omitting the actual number of laparotomy sponges which were actually used." Moreover, in Dr. Miller's opinion, "Dr.

Prieto and Dr. Garcia Arecha failed to meet the standard of care by failing to diagnose and remove the retained laparotomy sponge in a timely manner." Dr. Miller also criticized nurses Groce and Sanchez for failing to document and count the lapartomy sponges. Neither Dr. Miller nor Michelle Byrne, however, mention Dr. Garcia in their respective reports.

Nonetheless, Marichalar argues that the reports are sufficient because even though the expert reports served on Garcia do not mention him by name, they still qualify as a good-faith effort under section 74.351(*l*). "[W]e review a trial court's decision about whether a report constitutes a good-faith effort to comply with the [statute] under an abuse of discretion standard." *Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 53 (Tex.2002); *see Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 878–79 (Tex.2001).

According to Marichalar, the expert reports constitute a good-faith effort because Garcia's name was omitted due to conflicting medical records. In support, Marichalar quotes her trial counsel's argument at the hearing on Garcia's motion to dismiss:

> [Out] of an abundance of caution, I filed a report for a physician outlining the negligence and also a nurse. The difficulty with this case is, Your Honor, *the medical records are conflicting as to who the doctors really were.* We know Dr. Prieto was a surgeon, but there is a R. Garcia. There is a Luis Arecha, who we [sic] are not sure who the assistant surgeon is. I sent [a] request for disclosure to my physician. Dr. Garcia never answered. He hasn't taken the position he was the right doctor or not, but regardless of that, Your Honor, under the doctrine of res ipsa loquitur, I don't need to file a report.

(emphasis added). Marichalar's trial counsel's argument, however, may not be considered by the trial court.

■ In considering whether an expert report represents an objective good-faith effort, a trial court is limited to a review of the report itself. *See Palacios,* 46 S.W.3d at 878 (holding that trial court is limited to four corners of expert report when determining whether the report constitutes a good-faith attempt to comply with the statute); *see also Horizon/CMS Healthcare Corp. v. Fischer,* 111 S.W.3d 67, 68 (Tex. 2003) (declining to revisit *Palacios's* holding that a trial court is limited to the four corners of the report when considering whether the report represents a good-faith effort). According to the Texas Supreme Court, "the only information relevant to whether a report represents a good-faith effort to comply with the statutory requirements is the report itself." *Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 53 (Tex.2002). Here, because the trial court was limited to a review of the expert reports, it could not consider trial counsel's argument (or any evidence had it been brought forward at the hearing) that the medical records were conflicting about who the assistant surgeon was. *See id.; Martin v. Abilene Reg'l Med. Ctr.,* No. 11–04–00303–CV, 2006 WL 241509, at *2 (Tex. App.-Eastland Feb. 2, 2006, no pet. h.) (explaining that although section 54.351(*l*)'s requirement that a trial court hold a hearing "suggests a fact-finding exercise," "no evidence may be introduced at the hearing, and the trial court is limited to a review of the reports themselves").[1]

We must, therefore, consider whether the four corners of the expert reports represent a good-faith effort to comply with the statutory requirements.

■ Although an expert report "need not marshal all the plaintiff's proof," it must include the expert's opinion on each of the three elements that the statute identifies: standard of care, breach, and causal relationship. *Bowie,* 79 S.W.3d at 52; *Palacios,* 46 S.W.3d at 878. A report cannot merely state the expert's conclusions about these elements. *Bowie,* 79 S.W.3d at 52; *Palacios,* 46 S.W.3d at 879. "Rather, the expert must explain the basis of his statements to link his conclusions to the facts." *Bowie,* 79 S.W.3d at 52 (quotations omitted). To constitute a good-faith effort, an expert report "must provide enough information to fulfill two purposes: (1) it must inform the defendant of the specific conduct the plaintiff has called into question; and (2) it must provide a basis for the trial court to conclude that the claims have merit." *Bowie,* 79 S.W.3d at 52 (citing *Palacios,* 46 S.W.3d at 879).

Here, Marichalar contends that the expert reports inform Garcia of the specific conduct Marichalar has called in question: "the reports in this case focus on a single incident and single cause and are based on medical records as written." Although Marichalar's allegations focus on a single incident, she has sued multiple defendants. Section 74.351(r)(6) requires that an expert report explain how the care *rendered by the physician* failed to meet the applicable

---

1. We note that if the medical records are indeed conflicting, Marichalar could have propounded discovery to Dr. Garcia to discover whether he was the assistant surgeon. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(s) (Vernon Supp.2005) (allowing claimant, before the filing of an expert report, to discover all information, including medical or hospital records or other documents or tangible things, related to the patient's health care through (1) written discovery as defined in Texas Rule of Civil Procedure 192.7, (2) depositions on written questions under Texas Rule of Civil Procedure 200, and (3) discovery from nonparties under Texas Rule of Civil Procedure 205). And if Dr. Garcia failed to timely answer the discovery requests, Marichalar could have moved to compel his answers.

standard of care and the causal relationship between that failure and the injury suffered by the claimant. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(6) (Vernon Supp.2005) (" 'Expert report' means a written report by an expert that provides a fair summary of the expert's opinions ... regarding applicable standards of care, the manner in which the *care rendered by the physician* or health care provider *failed to meet the standards*, and the causal relationship between that failure and the injury, harm, or damages claimed."); *Palacios*, 46 S.W.3d at 878 ("That definition [of expert report] requires, *as to each defendant*, a fair summary of the expert's opinions about the applicable standard of care, the manner in which the care failed to meet that standard, and the causal relationship between that failure and the claimed injury."). Neither report filed by Marichalar discusses how the care rendered by *Dr. Garcia* failed to meet the applicable standard of care or how *Dr. Garcia's* failure caused Marichalar to suffer injury, harm, or damages. Indeed, neither report mentions Dr. Garcia at all. As such, neither report informed Dr. Garcia of the specific conduct he allegedly performed that Marichalar had called into question. We, therefore, hold that the expert reports filed by Marichalar did not constitute a good-faith effort to comply with the statutory requirements.

## C. Res–Ipsa Loquitur

■ Marichalar also argues that even if her reports did not comply with section 74.351, the reports were unnecessary because the doctrine of res-ipsa loquitur applies. We disagree.

■■ Res ipsa loquitur is not a cause of action separate and apart from negligence; instead, it is an evidentiary rule by which negligence may be inferred by a jury. *Haddock v. Arnspiger*, 793 S.W.2d 948, 950 (Tex.1990); *Vick v. Rangel*, No. 04–05–00362–CV, 2005 WL 2438375, at *1 (Tex.App.-San Antonio 2005, no pet.); *Hector v. Christus Health Gulf Coast*, 175 S.W.3d 832, 837 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). Res ipsa loquitur is applicable when the following two circumstances are present: (1) the character of the accident is such that it would not ordinarily occur in the absence of negligence, and (2) the instrumentality causing the injury is shown to have been under the management and control of the defendant. *Haddock*, 793 S.W.2d at 950.

■ Even if the doctrine of res ipsa loquitur applies to Marichalar's claim, she would still be required to file an expert report under section 74.351. Marichalar relies on section 74.201 in support of her argument that the doctrine of res ipsa loquitur applies to her claim. Section 74.201 restricts the use of res ipsa loquitur in health care liability claims:

> The common law doctrine of res ipsa loquitur shall only apply to health care liability claims against health care providers or physicians in those cases to which it has been applied by the appellate courts of this state as of August 29, 1977.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.201 (Vernon 2005). While section 74.201 allows for the applicability of res ipsa loquitur, we do not interpret it as an *exception* to section 74.351's expert report requirement. *Hector*, 175 S.W.3d at 838. Res ipsa loquitur is an evidentiary rule. In contrast, section 74.351's expert report requirement establishes a threshold over which a claimant must proceed to continue a lawsuit; it does not establish a requirement for recovery. *Id.* (quoting *Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex.2005)).

> It may be that once discovery is complete and the case is tried, there is no need for expert testimony.... But the

Legislature envisioned that discovery and the ultimate determination of what issues are submitted to the factfinder should not go forward unless at least one expert has examined the case and opined as to the applicable standard of care, that it was breached, and that there is a causal relationship between the failure to meet the standard of care and the injury, harm, or damages claimed.

*Hector,* 175 S.W.3d at 838 (quoting *Murphy,* 167 S.W.3d at 838) (alteration in original). Thus, because res ipsa is an evidentiary rule while the expert report is a threshold requirement to bringing a lawsuit, we do not believe that the Legislature intended for section 74.201 to eliminate the procedural requirement of an expert report at the commencement of litigation. *Id.*

Alternatively, even if the doctrine of res ipsa is an exception to the expert report requirement, Marichalar still needed an expert report to prove causation. The supreme court has noted that res ipsa loquitur is generally inapplicable in medical malpractice cases, but explained that it has been applied when "the nature of the alleged malpractice and injuries are plainly within the common knowledge of laymen, requiring no expert testimony." *Haddock,* 793 S.W.2d at 951; *Hector,* 175 S.W.3d at 837. According to the court, examples of such common knowledge include "negligence in the use of mechanical instruments, operating on the wrong portion of the body, or leaving surgical instruments or sponges within the body." *Haddock,* 793 S.W.2d at 951. Here, the last example given by the supreme court, leaving surgical sponges within the body, applies. Thus, res ipsa loquitur, an evidentiary rule, would allow a jury to infer breach of the standard of care.

Even if res ipsa allows for the jury to infer breach, an expert report would still be required with regard to causation. *Vick,* 2005 WL 2438375, at *1; *Hector,* 175 S.W.3d at 839. Marichalar, however, argues that no such expert would be necessary in this case to prove causation:

> The jury in this case will not need an expert to testify that a surgery is necessary to remove an improperly left sponge in the body. This is something within the common knowledge of a layperson. Further, the jury, when presented with Marichalar's testimony about the pain she suffered and *the medical records reflecting the necessary treatment,* will have sufficient evidence to deduce that the negligently left sponge proximately caused the subsequent surgery and that Marichalar suffered damages as a result of the surgery.

(emphasis added). While we agree that removing a sponge left inside a body is within the knowledge of a common layperson, *what the necessary treatment* and the damages resulting therefrom are not. Therefore, an expert report would still be needed to show causation.

### CONCLUSION

Because Marichalar did not timely serve Dr. Garcia with an expert report constituting a good-faith effort to comply with section 74.351 and because the doctrine of res ipsa loquitur does not provide an exception to section 74.351's expert report requirement, the trial court abused its discretion in denying Dr. Garcia's motion to dismiss. We, therefore, reverse the trial court's order and remand the cause with instructions to the trial court to award Dr. Garcia his reasonable attorney's fees and costs of court and to render judgment dismissing Marichalar's claims against Dr. Garcia with prejudice. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (Vernon Supp.2005)

(setting forth contents of order to be entered by trial court if expert report is untimely).