COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS





ALICIA G. MURPHY, M.D. and
MARIANO ALLEN, M.D.,

                                    Appellants,

v.

RICK MENDOZA and
IRENE MENDOZA,

                                    Appellees.

§
 
§
 
§
 
§
 
§

§


No. 08-06-00089-CV

Appeal from
327th District Court

of El Paso County, Texas

(TC # 2005-1644)




 

 

 




O P I N I O N

            Dr. Alicia G. Murphy and Dr. Mariano Allen appeal the denial of their motion to dismiss
this medical malpractice suit due to the inadequacy of the plaintiff’s expert report. We reverse and
remand. 
FACTUAL SUMMARY
            Rick and Irene Mendoza filed suit against Dr. Murphy, Dr. Allen, and Las Palmas Medical
Center in March 2005. The Mendozas alleged that the doctors, both of whom are pathologists, were
negligent in reading Rick’s bladder biopsy.


 The radiology report indicated malignant papillary
transitional cell carcinoma with extension into lamina propria and invasion of smooth muscle. As
a result, a urologist performed a radical cystectomy, whereby Rick’s bladder and prostate were both
removed. The Mendozas specifically alleged that the pathologists were negligent in: (1) misreading
or misinterpreting pathology specimens of biopsied bladder tissue; (2) incorrectly interpreting
bladder biopsies as having smooth muscle invasion when they did not; and (3) incorrectly reporting
pathology findings to the urologist. Simply stated, the Mendozas claim that the portion of the
bladder removed showed no signs of cancer. If the cancer cells have not invaded the smooth muscle,
removal is unnecessary. It is possible for the cancer cells to invade the external wall without
invading the smooth muscle. The extent of the invasion and the radiology interpretation thereof is
the crux of the issue before us.
            In support of their claims, the Mendozas timely provided an expert report from Dr. Jonathan
Epstein. The defendant pathologists challenged the adequacy of the report, complaining that it failed
to comply with the requirements of Section 74.351 of the Civil and Practice Remedies Code. They
argued that it was fatally flawed--defective, not deficient--and could not be cured.
            The Mendozas filed a response and attached an affidavit from their attorney, John Mundie. 
Mundie attested that he tried to obtain the original slides from pathology so that Dr. Epstein could
review them, but he was informed by Las Palmas that the originals could not be located.


 A recut
of the specimen was provided instead. The doctors objected to Mundie’s affidavit, noting that only
one of the slides reviewed by Dr. Epstein contained smooth muscle. The trial court denied the
motion to dismiss.
SUFFICIENCY OF THE REPORT
            On appeal, the doctors complain that Dr. Epstein’s report does not constitute a good faith
effort to comply with Section 74.351 because it is speculative, conclusory, and fails to identify them. 
They also allege that the trial court abused its discretion in overruling their objection to Mundie’s
affidavit.
Standard of Review
            We review the trial court’s decision to deny a motion to dismiss for an abuse of discretion. 
Kendrick v. Garcia, 171 S.W.3d 698, 703 (Tex.App.--Eastland 2005, pet. denied).


 A trial court
abuses its discretion if it acts without reference to any guiding rules or principles or acts in an
arbitrary or unreasonable manner. Id., citing Downer v. Acquamarine Operators, Inc., 701 S.W.2d
238, 241-42 (Tex. 1985), cert. denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). An
abuse of discretion does not occur merely because a trial judge decides a matter within her
discretionary authority in a different manner than we would. Downer, 701 S.W.2d at 242.
Good Faith Effort
            In a health care liability claim, a claimant shall, not later than the 120th day after the date the
claim was filed, tender one or more expert reports with a curriculum vitae of each expert listed in
the report for each physician or health care provider against whom a liability claim is asserted.


 
Tex.Civ.Prac.&Rem.Code Ann. § 74.351(a)(Vernon 2005). The court shall grant a motion
challenging the adequacy of an expert report only if it appears that the report does not represent an
objective good faith effort to comply with the definition of an expert report. Tex.Civ.Prac.&Rem.
Code Ann. § 74.351(l). An “expert report” is defined as a written report by an expert that provides
a fair summary of the expert’s opinions as of the date of the report regarding applicable standards
of care, the manner in which the care rendered by the physician or health care provider failed to meet
the standards, and the causal relationship between that failure and the injury, harm, or damages
claimed. Tex.Civ.Prac.&Rem.Code Ann. § 74.351(r)(6).
            To constitute a good-faith effort, an expert report must provide enough information to fulfill
two purposes: (1) the report must inform the defendant of the specific conduct the plaintiff has
called into question, and (2) the report must provide a basis for the trial court to conclude that the
claims have merit. Bowie Memorial Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002), citing American
Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 879 (Tex. 2001). A report need
not marshal all of the plaintiff’s proof, but it must include the expert’s opinion on the standard of
care, breach, and causal relationship. See Wright, 79 S.W.3d at 52. In determining whether a report
constitutes a good-faith effort, the trial court should look no further than the report itself since all the
information relevant to the inquiry is contained within the four corners of the document. Id.
Breach of Duty
            Dr. Epstein based his conclusions upon the recuts of the tissue slides. The pathologists
contend that his report is speculative because he assumed the recuts were an accurate representation
of the original slides. We agree. 
            Dr. Epstein’s report states:
In reading the original pathology report, its states ‘Malignant, consistent with
papillary transitional cell carcinoma, grade II/IV. Extension into lamina propria with
invasion of smooth muscle.’ Within the microscopic description it states ‘Groups of
malignant transitional epithelial cells are also seen extending into the lamina propria
and indeed even are seen to be surrounding bundles of smooth muscle fibers.’ The
pathology report is ambiguous, as one can see multiple fibers within the lamina
propria. These muscle fibers are termed muscularis mucosae. These muscle fibers
are to be contrasted with the thick muscle bundles in the bladder wall, which are
termed muscularis propria (detrusor muscle). I cannot tell from the pathology report
whether the muscle bundles that are invaded by tumor are muscularis mucosae or
muscularis propria. A clinician reading this report would most likely interpret the
report to indicate tumor invading the muscularis propria, which would be an
indication for radical cystectomy. However, I see no evidence of muscularis propria
(detrusor muscle) invasion on the histological slides. I cannot be sure if this is the
result of my review of recuts, as the original slides are not available for examination
or there was never muscularis propria invasion on the slides and only muscularis
mucosae invasion. Regardless, there is no evidence of muscularis propria invasion
present on my review and radical cystectomy would not be indicated in the absence
of muscularis propria invasion. In summary, I see no pathological evidence to
support radical cystectomy in the case of Ricardo Mendoza.
 
Assuming the recuts are an accurate representation of the original slides, there is no
evidence of muscularis propria invasion. The report should not have stated that there
was invasion of smooth muscle, as clinicians will assume the muscle to represent
muscularis propria (detrusor muscle). If the pathologist meant to state that there was
only muscularis mucosae invasion and not muscularis propria invasion then to meet
the standard of care for pathologists, the pathology report needs to be clear whether
the malignant papillary transitional cell carcinoma has invaded the muscularis propria
(detrusor muscle) or not. The pathology report of the original slides does not make
clear the level of invasion. Clarity is important because if the tumor invades the
muscularis propria then a radical cystectomy can be indicated. Without such
invasion, a radical cystectomy is not indicated.
            An expert must address the elements of the standard of care, breach, and causation in the
report. Wright, 79 S.W.3d at 52. Although the report need not marshal all of the plaintiff’s proof,
the expert may not merely state conclusions about the elements. Id. Rather, an expert must explain
the basis of his statements and link his conclusion to the facts. Id., citing Earle v. Ratliff, 998
S.W.2d 882, 890 (Tex. 1999).
            Here, Dr. Epstein’s conclusion is not supported by the facts because he relies upon the
assumption that the recuts were an accurate representation of the original slides. We do not suggest
that an expert may never rely upon recuts in formulating an opinion. But when the basis of the suit
is that the original slides were misinterpreted or misread, the expert must articulate how or why the
slides he has reviewed would likely represent an accurate depiction of the originals. Because Dr. 
Epstein’s report does not provide such an explanation, his opinion is both speculative and conclusory
with regard to a breach of the standard of care.
Causation
            Next, the pathologists argue that Dr. Epstein assumed Rick’s surgeon chose to do the
cystectomy based solely on the pathology report. Dr. Epstein’s report addressed the issue of
causation in the following manner:
The surgeon could have reasonably interpreted the report to indicate tumor invading
the muscularis propria. Failure of the pathologist to make clear whether tumor
invaded the muscularis propria was below standard. As a result of the misdiagnosis,
or failure to make clear the absence of invasion of muscularis propria, Mr. Mendoza
underwent a radical cystectomy that was not necessary. 

            To establish causation, an expert report must provide information linking the defendant’s
purported breach of the standard of care to the plaintiff’s injury. See Hutchinson v. Montemayor,
M.D., 144 S.W.3d 614, 617 (Tex.App.--San Antonio 2004, no pet.); see also Wright, 79 S.W.3d at
53. The expert must also explain the basis of his statements to link his conclusions to the facts. 
Wright, 79 S.W.3d at 52.
            Dr. Epstein’s report fails to articulate the link between the breach of the standard of care and
the purported injury. He merely contends the surgeon “could have reasonably interpreted the report”
to indicate a tumor was invading the muscularis propria. Nothing in the report substantiates his
assumption that the surgeon based the decision to perform a cystectomy on the faulty pathology
report. Hutchinson, 144 S.W.3d at 618 (a causal connection in a medial malpractice suit cannot be
made to turn upon speculation or conjecture and must show more than a mere possibility). Nor can
we infer that the surgeon relied upon the ambiguous report in deciding the surgical options. See
Wright, 79 S.W.3d at 53; Hutchison, 144 S.W.3d at 617. In short, the report fails to link the
purported breach with the surgeon’s decision to perform the cystectomy.
            The pathologists also challenge Dr. Epstein’s qualifications, complaining that as a
pathologist, he cannot render a surgical opinion. Dr. Epstein’s curriculum vitae is extensive. He is
the Reinhard Professor of Urologic Pathology, Directory of Surgical Pathology, and a Professor in
the Departments of Pathology, Urology, and Oncology at John Hopkins University Medical Center
in Baltimore, Maryland. He has numerous editorial appointments, including the American Journal
of Surgical Pathology and Urologic Oncology. The recipient of the American Cancer Society
Clinical Oncology Career Development Award, The Johns Hopkins Hospital Department of
Pathology Faculty Teaching Award, and the Arthur Purdy Stout Society of Surgical Pathologists
Award, he has written numerous articles and books on pathology and urologic disorders. A national
consultant for urologic pathology, Dr. Epstein is responsible for the attending division of surgical
pathology. He instructs pathology residents in surgical pathology, conducts a series of conferences
for pathology residents in urologic pathology, soft tissue pathology, and critical literature review. 
He is the co-director of the Johns Hopkins Department of Pathology, Critical Issues in Surgical
Pathology Course.
            While Dr. Epstein certainly has knowledge of surgical pathology, the extent of his expertise
and qualification to render a surgical opinion is unclear. Dr. Epstein does not explain how or
whether his qualifications as a surgical pathologist qualify him to render an opinion on Rick’s
surgical treatment. We sustain Issues One and Two.
Identification of Defendants
            In their third issue for review, the doctors contend that the report fails to identify them by
name or to distinguish the conduct giving rise to the claims against them. Dr. Epstein stated:
I have reviewed the pathology records and operation report and recuts of tissue slides
from Las Palmas Medical Center in El Paso, Texas concerning the transurethral
resection of bladder tumor performed on Ricardo Mendoza on November 27, 2001. 
I have also reviewed the pathology records and operation report of the radical
cystoprostatectomy performed on December 15, 2001. 

. . .
 
I have reviewed the slides from his bladder biopsy, labeled 01-6376A and B from Las
Palmas Medical Center, El Paso, Texas. The specimen part A shows an invasive
high grade papillary urothelial carcinoma. The carcinoma invades the lamina
propria. The muscularis propria is not present for evaluation. Specimen B shows a
non-invasive high grade papillary urothelial carcinoma. There is no evidence of
muscularis propria (detrusor muscle) invasion present on this specimen.

            The expert report must inform the defendant of the specific conduct the plaintiff has called
into question. Palacios, 46 S.W.3d at 879. What is required is a fair summary of the expert’s
opinions about the standard of care, breach, and causal relationship as to each defendant. See id. 
The Mendozas contend Dr. Epstein’s report was adequate to apprise the doctors of the conduct that
is questioned because the pathology report was signed by both of them and Dr. Epstein’s report does
not reference any other physicians’ involvement in the pathological assessment. 
            Dr. Epstein reviewed various pathology and operation reports and stated that his opinion was
based on the “original pathology report.” The report does not mention either pathologist by name.
Garcia v. Marichalar, 198 S.W.3d 250, 254-55 (Tex.App.--San Antonio 2006, no pet.)(Section
74.351(r)(6) requires that an expert report explain how the care rendered by the physician failed to
meet the applicable standard of care and the causal relationship between that failure and the injury
suffered). The report also fails to identify the contribution of each doctor to the assessment and
analysis of Mendoza’s specimens, and whether either doctor is subject to a different standard of care
if the roles and responsibilities differed. Garcia, 198 S.W.3d at 254-55 (although expert report
focused on single incident, it did not inform the defendant of his specific conduct called into
question because multiple defendants were sued and the report failed to discuss how the defendant’s
care failed to meet standard of care or how the defendant’s care caused harm). We sustain Issue
Three.
John Mundie’s Affidavit
            In their fourth issue and final issue, Drs. Murphy and Allen contend the trial court erred in
overruling their objection to Mundie’s affidavit: 
I tried to obtain the original slides from pathology specimen 01-VH-S006376 from
Las Palmas Medical Center so my expert pathologist, Dr. Jonathan Epstein, M.D.,
could review them. Upon inquiry with Dr. Glen Friedman, M.D. of the Pathology
Department at Las Palmas Medical Center I learned that the original slides from
pathology specimen 01-VH-S006376 could not be located. I did, however, receive
recuts of the pathology specimen.
Whether the report represents a good faith effort must be determined only by the information
contained within the four corners of the document itself. See Palacios, 46 S.W.3d at 878. To the
extent the trial court relied upon Mundie’s affidavit, it abused its discretion.


 We sustain Issue Four. 
CONCLUSION
             Although the expert report was deficient, it was timely filed. The trial court could grant the
Mendozas’ request for an extension of time to cure the report’s deficiencies.


 Section 74.351(c);
Wells v. Ashmore, 202 S.W.2d 465, 468 n.1 (Tex.App.--Amarillo 2006, no pet.h.); Longino v.
Crosswhite ex rel. Crosswhite, 183 S.W.3d 913, 918 n.2 (Tex.App.--Texarkana 2006, no pet.). We
reverse and remand for proceedings consistent with this opinion.


January 11, 2007                                                         
                                                                                    ANN CRAWFORD McCLURE, Justice

Before McClure, J., Barajas, C.J. (Ret.), and Ables, J.
Barajas, C.J. (Ret.), sitting by assignment
Ables, J., sitting by assignment