# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00607-CV

**Austin Heart, P.A. and David J. Kessler, M.D., Appellants**

**v.**

**Christian L. Webb and Marilou Webb, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. D-1-GN-06-000376, HONORABLE PAUL DAVIS, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

While the expert report requirement in medical malpractice cases is designed to weed out frivolous claims, it is not meant to be an insurmountable hurdle. The majority raises the bar, however, by requiring a fastidious reading of the report. The expert report proffered by the Webbs may not be a perfect report, but it is clear when viewed as a whole whose conduct is at issue—Dr. Kessler's. I therefore cannot agree that the trial court abused its discretion in finding the report adequate. I would affirm the order of the trial court.

Even assuming the report is merely "some report as to Dr. Kessler (among others)," the remand fashioned by the majority is not appropriate in this case and alters the statutory scheme crafted by the legislature. Austin Heart and Dr. Kessler moved to dismiss the Webbs' lawsuit solely on the ground that the expert report was "no report" and, thus, the trial court had no discretion to consider an extension to cure deficiencies. Having found that the report is indeed some report for

which the trial court could have granted an extension, the majority has rejected Austin Heart's and Dr. Kessler's sole ground for dismissal. The appropriate remedy would be a remand to the trial court for the cause to proceed without the need for an extension. For these reasons, I respectfully dissent.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 31, 2006, the Webbs filed suit against Austin Heart and Dr. Kessler, alleging that Dr. Kessler, individually, and Austin Heart, through the actions of Dr. Kessler, negligently failed to diagnose and treat Christian Webb for a medical condition related to his pacemaker that caused him to experience "severe palpitations" and other associated health conditions. On May 31, 2006, the Webbs filed the expert report and curriculum vitae of Dr. Alan Cororve pursuant to section 74.351 of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (West Supp. 2006). Austin Heart and Dr. Kessler filed a motion to dismiss under section 74.351(b), asserting that the Webbs had failed to file an expert report specifically addressing the standard of care, breach of the standard of care, or causation as to either Austin Heart or Dr. Kessler. *See id.* § 74.351(b). The district court initially granted the motion to dismiss. The Webbs filed a motion for rehearing and motion for new trial, and the district court granted the motions. The district court then denied Austin Heart's and Dr. Kessler's motion to dismiss, and this interlocutory appeal followed.

## ANALYSIS

In their single issue on appeal, Austin Heart and Dr. Kessler argue that dismissal was mandated by section 74.351(b).

*Abuse of discretion standard*

We review a trial court's ruling on a motion to dismiss under section 74.351(b) for an abuse of discretion. *American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877-78 (Tex. 2001). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). When reviewing matters committed to the trial court's discretion, we may not substitute our own judgment for that of the trial court. *Walker v. Gutierrez*, 111 S.W.3d 56, 63 (Tex. 2003).

*The expert report requirement*

In a health-care liability claim, the claimant must provide each defendant with one or more expert reports, including a curriculum vitae for each expert, within 120 days of filing the original petition. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). An "expert report" is:

> a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between the failure and the injury, harm, or damages claimed.

*Id.* § 74.351(r)(6). Failure to serve an adequate expert report mandates dismissal with prejudice. *Id.* § 74.351(b). A report need not marshal all of the plaintiff's proof, but it must include the expert's opinion on each of the elements identified in the statute. *Palacios*, 46 S.W.3d at 878. To constitute a good faith effort, the report must inform the defendant of the specific conduct called into question and provide a basis for the trial court to determine that the claims have merit. *Id.* at 879.

3

The supreme court has stated that "to avoid dismissal, a plaintiff need not present evidence in the report as if it were actually litigating the merits. The report can be informal in that the information in the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial." *Id.* Because the statute focuses on what the report should discuss, the only information relevant to the inquiry is that which appears within the four corners of the document. *Id.* at 878. When examined in its entirety, an expert report may be so deficient as to a particular defendant that it constitutes no report as to that defendant. *See, e.g.*, *Garcia v. Marichalar*, 198 S.W.3d 250, 255 (Tex. App.—San Antonio 2006, no pet.) (*Garcia II)*; *Garcia v. Marichalar*, 185 S.W.3d 70, 74 (Tex. App.—San Antonio 2005, no pet.) (*Garcia I)*.

### Dr. Cororve's report

To satisfy the expert report requirement, the Webbs served Austin Heart and Dr. Kessler with a two-and-one-half-page report from Dr. Cororve. The report begins by stating that "[a]ny reference in this report to Dr. David J. Kessler, M.D. refers to Dr. Kessler individually, and his employer, Austin Heart, P.A."[1] In a section titled "Materials Reviewed and Background," the first paragraph begins, "My opinions are based upon my review of . . . ," then lists specific medical records and office notes from four medical facilities and five doctors, and states that "[i]n addition,

---

[1] While Dr. Cororve's report explicitly mentions Austin Heart, the Dallas court of appeals has held that when a defendant is only alleged to be vicariously liable for the negligence of another defendant, the expert report need not specifically name or address the negligence of the defendant to whom liability will be imputed. *University of Tex. Sw. Med. Ctr. v. Dale*, 188 S.W.3d 877, 879 (Tex. App.—Dallas 2006, no pet.). What is relevant is that the report specifically identify the person whose conduct the plaintiff is calling into question and show how that person's conduct constituted negligence. *Id.*

4

my opinions are based upon my experience, training, knowledge, and qualifications as a physician."

The report next discusses Mr. Webb's treatment history following the implantation of his pacemaker

on November 30, 2001:

> Subsequent to that procedure, Mr. Webb complained on various occasions concerning his sensing the pacemaker pacing or being aware of forceful heartbeats. To that extent, Dr. Kessler noted on 01/18/02 "possibly diaphragmatic stimulation intermittently." With the office visit of 03/19/03, Dr. Kessler notes this was the second complaint of abdominal twitching. The pacemaker was reduced to see if abdominal symptoms could be relieved with less frequent pacing. On 04/25/03, Dr. Kessler states the patient was aware of pacing intermittently and was suspicious of diaphragmatic stimulation.
>
> Dr. Kessler states he had previously assessed this and had not found it to be present. On that day, he tested the pacemaker with various outputs, the patient was aware of pacing at higher outputs, but the doctor did not believe the patient had true diaphragmatic stimulation.
>
> During a pacemaker check performed on 06/08/03, the patient stated he still had "hiccup" feelings in his abdomen, and Dr. Rodgers' office note of 05/06/04 stated the patient had some feelings of hiccup-like discomfort.
>
> On 12/16/04, Dr. Kessler references the patient's ongoing anxiety, use of Xanax and his request for the PCP's assistance managing the anxiety. Mr. Webb's email to Dr. Kessler on 04/27/05 states how the patient's "been suffering two years." The patient's email of 05/04/05 asks if the pacemaker lead might be in the wrong place, and Dr. Rodgers responded "no."[2] Dr. Kessler's note of 05/27/05 states the patient was complaining of palpitations but "I am reluctant to place a new lead at this time."
>
> Subsequent to these events, Mr. Webb continued to have palpitations and problems with diaphragmatic stimulations. He was seen by various physicians, including several electrophysiological consultations. The persistence of his symptoms

---

[2] Earlier in the report, under the materials reviewed section, Dr. Cororve refers to an e-mail from Mr. Webb to Dr. Kessler dated 05/04/05. In their brief on appeal, the Webbs assert that the report erroneously attributes the response to that e-mail as being from Dr. Rodgers when it was actually from Dr. Kessler. There is, however, no evidence in the record indicating who sent the e-mail.

significantly impaired his quality of life and ability to concentrate at work. Because of this, he was presescribed an anti-depressant and anti-anxiety medication. Further evaluation eventually documented diaphragmatic stimulation and a new right ventricular lead was placed on September 7, 2005. The patient was subsequently discharged in excellent condition.

The report has three final sections setting out the three statutorily required elements:

### Standard of Care

The standard of care in a patient such as this requires more intensive investigation as to the source of a patient's symptoms and subsequent corrective actions to ameliorate the problem. Attempts at adjusting the ventricular pacing outputs should routinely be attempted and would most likely have pinpointed the problem much earlier. This standard of care was not met.

### Standard of care not met

The diagnostic and corrective action eventually taken, specifically the increase in the ventricular pacing output, should have been implemented much sooner.

### Causation

Had the corrective action described occurred, Mr. Webb would not have undergone the physical and mental problem(s) he had and could have continued his normal lifestyle much earlier than he did.

Austin Heart and Dr. Kessler do not challenge the adequacy of the report's description of these three elements; rather, they assert that it is not clear to which doctor they apply because the report mentions five doctors and four health care institutions, but fails to reference any of the providers in the analysis of standard of care, breach and causation. They urge, therefore, that Dr. Cororve's report is essentially "no report" as to Austin Heart and Dr. Kessler.

6

Because Austin Heart and Dr. Kessler do not contest the adequacy of the report's descriptions of the statutorily required elements, the only question before this Court is whether the trial court abused its discretion in determining that the report sufficiently ties Dr. Kessler to the analysis of the statutory elements. From the context and structure of the report, it is clear that Dr. Cororve's listing of the notes and records of the doctors and health care institutions in the "Materials Reviewed" paragraph of the report was not intended to make the doctors or health care institutions themselves the focus of Dr. Cororve's analysis. Thus, the focus is on the section of the report discussing Mr. Webb's medical treatment and the sections setting out the statutorily required elements. In the medical-treatment discussion, only two doctors are named—Dr. Kessler and Dr. Rodgers—and there is one reference to unnamed "various physicians." No doctor is expressly mentioned in the sections addressing the statutorily required elements.

Austin Heart and Dr. Kessler contend that Dr. Cororve's report did not adequately tie Dr. Kessler to the statutory elements, citing this Court to *Jernigan*, 195 S.W.3d 91, *Garcia II*, 198 S.W.3d 250, *Garcia I*, 185 S.W.3d 70, and *Longino v. Crosswhite ex rel. Crosswhite*, 183 S.W.3d 913 (Tex. App.—Texarkana 2006, no pet.). These cases are distinguishable.

In *Jernigan*, the plaintiff filed suit against a hospital and several physicians including Dr. Jernigan. 195 S.W.3d at 92. The plaintiff served two expert reports; however, the first failed to mention Dr. Jernigan at all, and the second mentioned him in only one sentence: "At 4:30 p.m. [the plaintiff's] case was discussed with Dr. Jernigan . . . ." *Id.* at 93. The supreme court concluded that the report was inadequate as to Dr. Jernigan, stating that "[t]his passing reference does not identify with specificity any action or inaction by Dr. Jernigan that breached the applicable standard

of care. This perfunctory mention alleges no misconduct whatsoever, much less discusses the required elements with 'sufficient specificity' to inform Dr. Jernigan of 'the conduct the plaintiff has called into question.'" *Id.* (quoting *Palacios*, 46 S.W.3d at 875).

In *Longino*, the plaintiffs sued two doctors and a hospital for failing to diagnose their child's bacterial meningitis sooner. 183 S.W.3d at 915. The plaintiffs served a single expert report that did not distinguish between the actions of the two doctors. *Id.* at 917. The report stated that, "[i]n consultation with Dr. James Longino," Dr. Cameron ordered tests and admitted the plaintiffs' child to the hospital, and in the discussion of the standard of care, the report stated that

> Dr. Cameron['s] and Dr. Longino's care of [the plaintiffs' child] fell below the standard of care . . . . Their failure to either recognize or acknowledge the obvious symptoms of fever, altered mental status, and neck pain; to perform a timely diagnostic lumbar puncture; and to aggressively treat [the child's] bacterial meningitis with an appropriate combination of antibiotics led to an unnecessary exacerbation of his symptoms.

*Id.* The court concluded that the report contained "no specific information concerning how Longino breached the standard of care apart from Cameron's conduct," and therefore did not demonstrate a good-faith effort as to Longino. *Id.*

In the *Garcia* cases, the plaintiff filed suit against three doctors, two nurses, and a hospital. *Garcia II*, 198 S.W.3d at 252. The plaintiff served two expert reports, but neither report mentioned Dr. Garcia at all. *Id.* Dr. Garcia filed a motion to dismiss the claims against him asserting that he had not been "served" with a report. *Id.* The trial court initially granted the motion, but later dissolved its order and granted the plaintiff a 30-day extension to cure any deficiencies in the report. *Id.* In *Garcia I*, the appellate court addressed the extension, distinguishing situations in

which a deficient report is filed from those in which no report is filed—a trial court has discretion to grant a 30-day extension in the former situation, but not the latter. 185 S.W.3d at 73. Because the reports served by the plaintiff focused on the acts of other defendants and failed to mention Dr. Garcia at all, the court concluded that Dr. Garcia had not been served with a report and, thus, the trial court did not have authority to grant the extension. *Id.* at 74. In *Garcia II*, the appellate court addressed Dr. Garcia's motion to dismiss. 198 S.W.3d 250. The court concluded that "neither report informed Dr. Garcia of the specific conduct he allegedly performed that [the plaintiff] had called into question," and, thus, the expert reports did not constitute a good-faith effort to comply with the statutory requirements. *Id.* at 255. The court therefore held that the trial court abused its discretion in denying Dr. Garcia's motion to dismiss, and the cause was remanded with instructions to the trial court to render judgment dismissing the claims against Dr. Garcia with prejudice and to award him his reasonable attorney's fees and costs of court. *Id.* at 256 (citing Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b)).

Unlike *Jernigan*, *Longino*, and *Garcia*, in this case, the Webbs have filed a lawsuit complaining of the actions of only one doctor, Dr. Kessler, and their expert report is not one in which they mentioned him only in passing, in connection only with another doctor, or not at all. Instead, he is the subject of the majority of the report and is named eleven times.[3] The first paragraph, which states that any reference to Dr. Kessler refers to him individually and to his employer, Austin Heart, may be fairly read as signaling that the report is about Dr. Kessler. In addition, Dr. Cororve's

---

[3] While it is true that the number of times a physician is named, by itself, does not indicate the report complains of that physician's conduct, it is more likely that a report discussing mainly the conduct of one physician is about the conduct of that physician.

description of Mr. Webb's medical history covers five visits with and one e-mail to Dr. Kessler spanning two and one half years in which Dr. Kessler noted the following: "possibly diaphragmatic stimulation intermittently," a second complaint about abdominal twitching, Mr. Webb's awareness of pacing intermittently and suspicion of diaphragmatic stimulation, Mr. Webb's awareness of pacing at higher outputs, disbelief that the patient had true diaphragmatic stimulation, Mr. Webb's ongoing anxiety and request for assistance managing the anxiety, and Mr. Webb's complaining of palpitations, but "I am reluctant to place a new lead at this time." The report's two references to comments from Dr. Rodgers—a notation that the patient had some feelings of hiccup-like discomfort and a response of "no" to Mr. Webb's e-mail asking if the lead might be in the wrong place—as well as the single reference to unnamed "various physicians," do not obscure the report's focus on the actions of Dr. Kessler. In addition, unlike *Longino*, the actions of the two doctors named are distinguishable.

Dr. Cororve's analysis of the statutory elements states that the standard of care required "more intensive investigation," "[a]ttempts at adjusting the ventricular pacing outputs should routinely be attempted," and "[t]he diagnostic and corrective action eventually taken, specifically the increase in the ventricular pacing output, should have been implemented much sooner." In the discussion of Mr. Webb's medical history earlier in the report, it appears that both Dr. Kessler and Dr. Rodgers investigated Mr. Webb's symptoms; however, only Dr. Kessler is named in connection with testing and making adjustments to the pacemaker. In addition, Dr. Kessler's notations contradict what Dr. Cororve states is the standard of care. According to Dr. Cororve's report, Dr. Kessler "did not believe the patient had true diaphragmatic stimulation"

10

however, "[f]urther evaluation eventually documented diaphragmatic stimulation and a new right ventricular lead was placed." Under "Standard of Care," Dr. Cororve states that "[a]ttempts at adjusting the ventricular pacing outputs should routinely be attempted and would most likely have pinpointed the problem much earlier." After reviewing the report in its entirety, I cannot conclude that the trial court abused its discretion in determining that the report represents a good-faith effort to address the actions of Dr. Kessler.

***The Remand***

The majority concludes that Dr. Cororve's report is deficient and remands this cause to the district court to consider whether a 30-day extension is appropriate to address the deficiency. This remedy is inappropriate because it provides relief to Austin Heart and Dr. Kessler on a ground not raised in the trial court or on appeal. *See* Tex. R. App. P. 33.1.

Austin Heart and Dr. Kessler challenged Dr. Cororve's report solely on the ground that it was "no report," not that it was a "deficient report."[4] The difference between the two is strategically significant. If the report is "no report," then the trial court *must* dismiss the case with prejudice and has no discretion to grant a 30-day extension. Tex. Civ. Prac. & Rem. Code Ann.

---

[4] The motion to dismiss clearly distinguishes the two scenarios, stating:

> This is not an occasion in which a report was served on Austin Heart, P.A. or David J. Kessler, M.D. wherein the expert failed to address a requisite element, such as the standard of care, the alleged breach of the standard, or the alleged causal link, thus making the report deficient. Here, the report constitutes no report at all.

Thus, Austin Heart and Dr. Kessler did not, as the majority contends, "argue that the report in this case is so deficient that it should be viewed as 'no report.'"

11

§ 74.351(b)-(c); *Garcia I*, 185 S.W.3d at 73. Yet, if the report is merely "deficient" (and timely filed, as here), the trial court is not required to immediately dismiss and has discretion to grant a 30-day extension to cure the deficiencies. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c).

Austin Heart and Dr. Kessler elected to move for dismissal solely on the ground that the report was "no report."[5] Having concluded that the report is "some report as to Dr. Kessler (among others)," the majority has rejected the sole ground for dismissal. As such, the appropriate remedy would be a remand to the trial court for the cause to proceed without the need for an extension.

## CONCLUSION

In summary, I disagree with the majority's holding that the trial court abused its discretion in finding that the expert report proffered by the Webbs adequately links Dr. Kessler to the elements of standard of care, breach of the standard, and causation. I would affirm the order of the trial court. I further disagree with the remedy fashioned by the majority because it grants relief to Austin Heart and Dr. Kessler on a ground that they did not raise in the trial court or on appeal. For these reasons, I respectfully dissent.

---

[5] The remand fashioned by the majority grants Austin Heart and Dr. Kessler relief not requested because the majority treats their motion to dismiss as if it were based on two grounds: (1) that the report was "no report" and (2) that even if the report was some report that it was deficient. Austin Heart's and Dr. Kessler's motion, however, was based solely on the first ground. Without a motion to dismiss based on *deficiency*, there is no basis for a finding of deficiency and no need for a 30-day extension "to cure the deficiency." *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c).

_____

Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Waldrop

Filed:   May 9, 2007