

# NUMBER 13-12-00101-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**RAFAEL A. AVILA, M.D.,**                           **Appellant,**

**v.**

**EVA NELDA JIMENEZ, INDIVIDUALLY AND
AS EXECUTRIX OF THE ESTATE OF MARIO
M. JIMENEZ, M.D., DECEASED, NATALIA
JIMENEZ AND ANTONIO MANUEL JIMENEZ,**         **Appellees.**

---

On appeal from the 332nd District Court
of Hidalgo County, Texas.

---

# DISSENTING MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides, and Perkes
Dissenting Memorandum Opinion by Justice Perkes**

I disagree with the majority's holding for two reasons. First, I do not agree that the

expert report, filed on October 24, 2006, either implicated or was intended to implicate the

conduct of Dr. Avila. Second, I believe that the expert report, dated May 23, 2011, also

did not implicate the care given by Dr. Avila.   And, even if it did implicate Dr. Avila, it was "no report," because it did not meet the requirements set forth by the Texas Supreme Court in *Scoresby v. Santillan*.   *See* 346 S.W.3d at 549 (stating that the "Act does not suggest that a document utterly devoid of substantive content will qualify as an expert report.").

Appellees ("the plaintiffs") brought suit against multiple health care providers including Edinburg Surgery Center, L.P. d/b/a Surgical Center of South Texas; Edinburg Ambulatory Surgical Center, Inc. (Edinburg Surgery Center, L.P.'s general partner); Renaissance Surgical Centers - South Texas, L.L.P. d/b/a Renaissance Surgical Center of South Texas; Renaissance Surgical Centers - South Texas, Inc. (Renaissance Surgical Centers – South Texas L.L.P.'s general partner), Renaissance Surgical Center South Texas L.L.P. d/b/a Renaissance Surgical Center of South Texas; Renaissance Surgical Centers, Inc. (Renaissance Surgical Center South Texas, L.L.P.'s general partner); Universal Health Services, Inc.; Renaissance Healthcare Systems, Inc.; Mary Barrera, RN; Tammy Rivera, RN; John C. Rhinehart, CRNA; and Rafael A. Avila, M.D.   Appellees alleged that the defendants were negligent in performing an umbilical hernia repair, liposuction, and abdominoplasty on Mario M. Jimenez.

Appellees subsequently entered into a Rule 11 agreement with Dr. Avila's counsel on October 23, 2006, one day *before* the October 24, 2006 expert report was filed.   The rule 11 agreement extended appellees' deadline to file "**any and all** expert report(s) required by Section 74.351" to the fourteenth day after counsel for appellees received the transcript of Dr. Avila's deposition.   While the majority suggests the October 2006 report

was served with respect "to all health care providers in this case, including Dr. Avila," it seems highly unlikely that the report was intended to include any claim against Dr. Avila, particularly since the rule 11 agreement, dated one day prior to the October 2006 report was filed, extended appellees' deadline to file **any and all** reports implicating Dr. Avila.

On May 23, 2011, appellees filed the following expert report, which states, in its entirety, as set forth below. No medical records or other affidavits were submitted.

EXPERT REPORT:
Attorney-Client Privileged Document

I.      Jose Perez, M.D., F.C.C.P.

II.     Board certified in Pulmonary Diseases and Critical Care Medicine; in process of renewing board certification of Internal Medicine.

III.    I have reviewed the medical records of Mario Jimenez, M.D. from Renaissance Surgical Center of South Texas, Starr EMS, Starr County Memorial Hospital, and McAllen Medical Heart Hospital.

IV.     The standard of care requires assessment with complete History and Physical Examination prior to surgery. This is especially crucial for a diabetic patient; EKG, Stress Test, and Blood work are part of the examination.

V.      This patient would have been saved if the surgeries had performed in a hospital setting with the facilities to have properly resuscitated him. The main surgery the patient went in for was hernia repair, which should have been done in a hospital.

CONCLUSION:

Based on my review of the medical records, it is my opinion, based on reasonable medical probability, that the lack of appropriate care and treatment was a direct and proximate cause of the death of Mario Jimenez, M.D. It fell below the standard of care to perform the surgeries in an ambulatory surgical center setting. Further, if such surgeries are performed in an ambulatory care setting, the patient must be observed at least overnight. But for the inappropriate discharge of Mario Jiminez, M.D. from the ambulatory surgical center on April 13, 2004, Mario Jimenez, M.D.

3

would not have expired on April 14, 2004. Had Mario Jimenez, M.D. been placed in a hospital setting with the ability to provide supportive therapy and care to timely treat the development of fat emboli, it is my medical opinion that more likely than not Mario Jimenez, M.D. would have survived the episode that took his life on April 14, 2004.[1]

Notably this report was also written before Dr. Avila was deposed on July 8, 2011. On August 24, 2011, Appellees' counsel received the transcription of his deposition. Thus, appellees had until September 7, 2011 to file a report that implicated Dr. Avila. No further report or documentation was filed. On October 5, 2011, Dr. Avila filed a motion to dismiss.

At a hearing held in November 2011, appellees' counsel urged that the May 23, 2011 report implicated Dr. Avila's conduct. The majority concludes, and I agree, that the May 23, 2011 report mirrored the report of October 2006, except that the May 2011 report further concludes: (1) "It fell below the standard of care to perform the surgeries in an ambulatory surgical center setting", and (2) "if such surgeries are performed in an ambulatory care setting, the patient must be observed at least overnight."

I disagree with the majority, however, that the May 2011 report applied to Dr. Avila's care. In addition to the fact that it was prepared well before the deadline set forth in the parties' rule 11 agreement, Dr. Avila is not named in the report, and no other affidavits, medical records, or other documents are attached to or otherwise accompanied the May 2011 report. In addition, the report does not state what, if

---

[1] The introductory language is identical in both reports. The October 24, 2006 report, however states in its Conclusion: Based on my review of the medical records, it is my opinion, based on reasonable medical probability, that the lack of appropriate care and treatment was a direct and proximate cause of the death of Mario Jimenez, M.D. But for the inappropriate discharge of Mario Jimenez, M.D. from the ambulatory surgical center on April 13, 2004, Mario Jimenez, M.D. would not have expired on April 14, 2004. Had Mario Jimenez, M.D. been placed in a hospital setting with the ability to provide supportive therapy and care to timely treat the development of fat emboli, it is my medical opinion that more likely than not Mario Jimenez, M.D. would have survived the episode that took his life on April 14, 2004.

4

anything, that Dr. Avila personally did or did not do, and does not include any opinions specifically critical of Dr. Avila's care. I would hold that the report was "no report" as to Dr. Avila.

In *Scoresby*, the supreme court concluded that a thirty-day extension to cure deficiencies may be granted if: (1) the report is served by the statutory deadline; (2) it contains an opinion of an individual with expertise that the claim has merit; and (3) the defendant's conduct is implicated. *Id.* at 557. To be a report as to a particular defendant, there is no requirement that a document refer to the defendant by name, so long as it implicates the defendant's conduct. *Ogletree v. Matthews*, 262 S.W.3d 316, 323-22 (Tex. 2007). A report served in a medical liability lawsuit, however, does not implicate a particular health care provider's conduct merely because the provider is a defendant in the lawsuit. *Id.*

In *Scorseby*, the supreme court attempted to distinguish between a report that is so insubstantial that it does not constitute a report under section 74.351, and one that is merely deficient, but may be amended. *Scoresby*, 346 S.W.3d at 555. Here, even if we assume that the report meets the first two requirements set forth in *Scorseby,* it clearly does not meet the third. The report wholly fails to name any of the medical defendants, and certainly does not name or otherwise implicate Dr. Avila. *See e.g., Sinha v. Thurston*, 373 S.W.3d 795, 800-01 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (expert report that did not name appellant physician or implicate his conduct constituted no report as to physician); *Haskell v. Seven Acres Jewish Senior Care Services, Inc.*, 363 SW3d 754, 760-61 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (report that did not

name nurse defendant, apply any standard of care or identify any negligent conduct on her part deemed "no report"); *Laredo Texas Hosp.Co. v. Gonzalez*, 363 S.W.3d 255, 258-59 (Tex. App.—San Antonio 2012, no pet.)(conclusory report offering no mention of any health care defendant or any applicable standard of care); *Bogar v. Esparza*, 257 S.W.3d 354, 364 (Tex. App.—Austin 2008, no pet.) ("W]here a defendant is not identified at least in some manner within the 'four corners' of the report, the report is, for that reason alone, deficient as to that defendant because it would require the reader to infer or make an educated guess as to whose actions the expert is complaining."); *Rivenes v. Holden*, 257 S.W.3d 332, 338-39 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (holding report discussing conduct of co-defendant physician, hospital, and unidentified "emergency room staff" was no report as to appellant physician); *Apodaca v. Russo*, 228 S.W.3d 252, 257 (Tex. App.—Austin 2007, no pet.) (holding report which referred to other health care providers but did not mention sole defendant or discuss how the defendant breached the standard of care or caused injury or damages was no report as to defendant); *Garcia v. Marichalar*, 198 S.W.3d 250, 252 (Tex. App.—San Antonio 2006, no pet.) (holding reports insufficient that did not mention appellant physician or discuss how the care rendered by him failed to meet the applicable standard of care, or how his failure caused the defendant to suffer injury, harm or damages).

The May 2011 report suggests that the standard of care requires an assessment with complete history and physical examination prior to the surgery and concludes that the patient would have been saved if the facility had properly resuscitated him. The report also concludes that the surgery should have been done in a hospital. The

reporting physician's conclusions on causation do not flow from what he opines was the standard of care. Most important, however, is that nothing in the report sets forth a standard of care for Dr. Avila or a breach of a standard of care. It is simply no report with respect to the care given by Dr. Avila. *See. Id.*

I would conclude the trial court abused its discretion in denying Dr. Avila's motion to dismiss, and reverse the trial court's judgment.

GREGORY T. PERKES
Justice

Delivered and filed the
11th day of April, 2013.

7