COURT OF APPEALS
 


THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 

 

NUMBER 13-07-014-CV


VICTOR HADDAD, M.D., Appellant,


v.

CESAR MARROQUIN, Appellee.

 
 

NUMBER 13-07-109-CV


MCALLEN HOSPITALS, L.P., D/B/A

MCALLEN MEDICAL CENTER, 

IMPROPERLY NAMED AS 

MCALLEN MEDICAL CENTER, INC., Appellant,


v.

CESAR MARROQUIN, Appellee.

 


On appeal from the 332nd District Court 


of Hidalgo County, Texas.

 

 

MEMORANDUM OPINION



Before Justices Yañez, Rodriguez, and Garza


Memorandum Opinion by Justice Garza
 


 Victor Haddad, M.D. (Haddad) and McAllen Hospitals, L.P., d/b/a/ McAllen
Medical Center (McAllen Medical), appellants, filed this interlocutory appeal challenging
the trial court's order denying their motions to dismiss appellee, Cesar Marroquin's,
health care liability claim brought against Dr. Haddad and McAllen Medical. See Tex.
Civ. Prac. & Rem. Code Ann. §§ 51.014(a)(9), 74.351(a)-(b), (l) (Vernon Supp. 2006). 
Although Dr. Haddad and McAllen Medical filed separate motions to dismiss and have
filed separate appeals, the issues are sufficiently similar that they can be disposed of
in one opinion. We reverse and remand to the trial court. 

I. Factual and Procedural Background

 On April 26, 2004, Marroquin was admitted to McAllen Medical Center for
treatment. Dr. Haddad admitted Marroquin. Dr. Haddad performed an appendectomy
on Marroquin. Following surgery, Marroquin continued to experience severe abdominal
pain and a general feeling of malaise. On January 3, 2005, experiencing unbearable
pain, Marroquin presented himself to Rio Grande Regional Hospital. He was admitted
for surgery. This surgery revealed that Marroquin's small intestine and sac formation
was filled with a firmly attached surgical cotton sponge that had caused him acute and
chronic inflammation. 

 On June 29, 2006, Marroquin filed a health care liability action against McAllen
Medical and Dr. Haddad, alleging medical malpractice in his medical treatment. 
Specifically, Marroquin alleged that McAllen Medical and Dr. Haddad were negligent
during the appendectomy. Marroquin alleged that McAllen Medical Center and Dr.
Haddad failed to perform a proper sponge count, which resulted in a retained sponge
at the surgical site.

 On October 25, 2006, Marroquin filed an expert report by Diego Camacho, M.D. 
On November 8, 2006, Dr. Haddad filed a motion to dismiss Marroquin's expert report
pursuant to section 74.351(a), (b), and (r)(6). Tex. Civ. Prac. & Rem. Code Ann. §
74.351(a)-(b), (r)(6). (1) Dr. Haddad claimed the report was inadequate because it failed
to set out the standard of care applicable to him, failed to identify any alleged breach
by him, and failed to identify and explain any causal link between any alleged breaches
and Marroquin's complained-of injuries. See id. § 74.351(r)(6). Dr. Haddad requested
that the trial court award him reasonable attorney's fees and costs, and that it dismiss
Marroquin's cause of action with prejudice. 

 On November 15, McAllen Medical filed its motion to dismiss Marroquin's expert
report pursuant to section 74.351 on grounds that Dr. Camacho's report did not
satisfy the requirements of section 74.351(r)(6). Id. Specifically, the motion to
dismiss alleged that the report fails to "state the specific ways in which the care and
treatment rendered by [McAllen Medical] failed to meet the standard of care." 
Additionally, the motion alleged the report "does not specifically state how [McAllen
Medical's] alleged breach of care caused [Marroquin's] injuries." McAllen Medical then
asked the trial court to dismiss the cause of action with prejudice. See id. § 74.351
(b), (l). After a hearing, the trial court denied the motions. This interlocutory appeal
ensued. See id. § 51.014(a)(9).

II. Applicable Law

 The Medical Liability and Insurance Improvement Act ("MLIIA"), codified in
Chapter 74 of the Texas Civil Practice and Remedies Code, governs the adjudication
of health care liability claims in Texas. See id. § 74.013(a) (Vernon Supp. 2006). 
Section 74.351(a) requires plaintiffs in suits involving health care liability claims to
submit an expert report. Id. § 74.351(a). The statute defines an expert report as "a
written report by an expert that provides a fair summary of the expert's opinions . .
. regarding applicable standards of care, the manner in which the care rendered . . .
failed to meet the standards, and the causal relationship between that failure and the
injury, harm, or damages claimed." Id. § 74.351(r)(6). An expert report "need not
marshal all the plaintiff's proof," but it must represent "a good-faith effort to comply
with the statutory definition of an expert report" in the MLIIA. Bowie Mem'l Hosp. v.
Wright, 79 S.W.3d 48, 52 (Tex. 2002) (quoting Am. Transitional Care Ctrs. of Tex.,
Inc. v. Palacios; 46 S.W.3d 873, 879 (Tex. 2001)); see Tex. Civ. Prac. & Rem. Code
Ann. § 74.351(l) ("A court shall grant a motion challenging the adequacy of an expert
report only if it appears to the court, after hearing, that the report does not represent
an objective good faith effort to comply with the definition of an expert report in
Subsection (r)(6)."). A good-faith effort informs the defendant of the specific conduct
called into question and provides a basis for the trial court to conclude that the claims
have merit. Palacios, 46 S.W.3d at 879 (holding that trial court is limited to four
corners of expert report when determining whether the report constitutes a good-faith
attempt to comply with the statute). 

III. Standard of Review

 We review a district court's ruling on a motion to dismiss under section 74.351
for an abuse of discretion. Id. at 877-78. A trial court abuses its discretion when it
acts in an arbitrary or unreasonable manner or without reference to any guiding rules
or principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.
1985). A trial court does not abuse its discretion simply because it may decide a
matter within its discretion differently than an appellate court. Id. at 242. However,
a trial court has no discretion in determining what the law is or applying the law to the
facts. Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992). "[A] clear failure by the
trial court to analyze or apply the law correctly will constitute an abuse of discretion." 
Id. In assessing the trial court's decision, we are especially mindful of the claimant's
responsibility to provide as to each defendant, a fair summary of the expert's opinions
about the applicable standard of care, the manner in which the care failed to meet that
standard, and the causal relationship between that failure and the claimed injury. See
Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6); Palacios, 46 S.W.3d at 879. 

IV. Analysis

 On appeal, Dr. Haddad re-asserts his contention that Marroquin's expert report
failed to set out the standard of care applicable to him because it failed to identify any
alleged breach by him, and failed to identify and explain any causal link between any
alleged breach and the complained-of injuries. McAllen Medical also re-asserts its
allegation that the report is inadequate because it failed to state the specific ways in
which the care and treatment it rendered failed to meet the standard of care, and that
the report fails to state how any alleged negligence by McAllen Medical caused
Marroquin's injuries.

 The report, prepared by Dr. Camacho, states his qualifications and an overview
of the medical facts. (2) The relevant portions of the report read as follows:


SPECIFIC FINDINGS CALLED INTO QUESTION


 1. Patient was not evaluated by a surgeon at Edinburg
Regional Medical Center emergency department. An acute
care hospital. [sic]


 2. Patient was not evaluated in the emergency room by a
surgeon at McAllen Medical Center and proceeded to
surgery anyway.


 3. There is not evidence in the nurses notes that Dr. Haddad
actually examined the patient and evaluated the history and
CT scan of this patient prior to surgery.


 4. Exploratory laparotomy lasted for one hour when there was
nothing else done other than leaving a large sponge in the
abdominal cavity.


 5. The count of the large cotton sponges was incorrectly
performed by hospital staff.


APPLICABLE STANDARDS OF CARE


 

 The standards of care of general surgery dictates the
complete evaluation of a patient by the surgeon with
complete explanation of the procedure including the benefits
and possible complications by the surgeon. Dr. Haddad
failed [to] evaluate Mr. Marroquin at the emergency
department of McAllen Medical Center before the patient
was transferred to the operating room.



 

 A large cotton sponge was left in the abdomen of Mr.
Marroquin after an apparently non-complicated surgical
procedure. Dr. Haddad failed to perform an appropriate
evaluation and personal assessment and control the material
that he used and placed in the abdominal cavity of the
patient.



 

 McAllen Medical Center OR employee failed to perform an
appropriate count of large cotton sponges in an apparent
non-complicated case that lasted for 1 hour.



 

 Mr. Marroquin received inappropriate follow-up for his
chronic abdominal pain after a surgical procedure. Dr.
Haddad did not follow a patient in whom he had performed
surgery who continued to have abdominal pain.


 

PROXIMATE CAUSE OF INJURY

 

Mr. Marroquin suffered pain and a second invasive surgical procedure due
to carelessness on the part of the McAllen Medical Center OR employee
and Dr. Haddad.


 Although an expert report "need not marshal all the plaintiff's proof, it must
include the expert's opinion on each of the three elements that the statute identifies:
standard of care, breach, and causal relationship." Bowie, 79 S.W.3d at 52; Palacios,
46 S.W.3d at 878; Garcia v. Marichalar, 198 S.W.3d 250, 254 (Tex. App.-San
Antonio 2006, no pet.). "A report cannot merely state the expert's conclusions about
these elements." Bowie, 79 S.W.3d at 52; Palacios, 46 S.W.3d at 879. "'Rather, the
expert must explain the basis of his statements to link his conclusions to the facts.'" 
Bowie, 79 S.W.3d at 52 (quoting Earle v. Ratliff, 998 S.W.2d 882, 890 (Tex. 1999)). 
To constitute a good-faith effort, an expert report, "must provide enough information
to fulfill two purposes: (1) it must inform the defendant of the specific conduct the
plaintiff has called into question; and (2) it must provide a basis for the trial court to
conclude that the claims have merit." Bowie, 79 S.W.3d at 52 (citing Palacios, 46
S.W.3d at 879).

 We conclude that the report is deficient. It is obvious to this Court, as it
apparently was to the trial court, that Marroquin's primary complaint against Dr.
Haddad and McAllen Medical concerns the sponge that was left inside Marroquin
during the surgery. (3) However, the report does not set forth the appropriate standard
of care relating to the use and count of sponges as to Dr. Haddad or McAllen Medical. 
In his report, Dr. Camacho faults both Dr. Haddad and McAllen Medical, or McAllen
Medical's employee, but he fails to explain what the respective standards are as to
each and how they were breached. Further, Dr. Camacho's report does not state how
Dr. Haddad's follow-up care of Marroquin was "inappropriate" nor does it provide a fair
summary regarding the causal relationship between the allegedly inappropriate follow-up care and the injury, harm, or damages claimed. Moreover, Dr. Camacho's vague
statement that the "carelessness" of Dr. Haddad and/or McAllen Medical is the
proximate cause of Marroquin's injury is likewise insufficient. We, therefore, hold that
the expert report filed by Marroquin did not constitute a good-faith effort to comply
with the statutory requirements.

 Section 74.351(r)(6) requires that an expert report explain how the care
rendered by the physician failed to meet the applicable standard of care and the causal
relationship between that failure and the injury suffered by the claimant. See Tex. Civ.
Prac. & Rem. Code Ann. §74.351(r)(6); Palacios, 46 S.W.3d at 878. We, therefore,
hold that the expert report filed by Marroquin was inadequate and did not comply with
the requirements of section 74.351(r)(6). See Tex. Civ. Prac. & Rem. Code Ann. §
74.351(r)(6).

V. Res Ipsa Loquitur 

 In response to Dr. Haddad and McAllen Medical's motions to dismiss, Marroquin
argued that an expert report was unnecessary for his claim because it is based on the
theory of res ipsa loquitur. (4) We disagree.

 "Res ipsa loquitur is not a cause of action separate and apart from negligence;
instead, it is an evidentiary rule by which negligence may be inferred by a jury." 
Garcia, 198 S.W.3d at 255 (citing Haddock v. Arnspiger, 793 S.W.2d 948, 950 (Tex.
1990); Vick v. Rangel, No. 04-05-00362-CV, 2005 Tex. App. LEXIS 8196, at *3
(Tex. App.-San Antonio 2005, no pet.); Hector v. Christus Health Gulf Coast, 175
S.W.3d 832, 837 (Tex. App.-Houston [14th Dist.] 2005, pet. denied)). "Res ipsa
loquitur is applicable when the following two circumstances are present: (1) the
character of the accident is such that it would not ordinarily occur in the absence of
negligence, and (2) the instrumentality causing the injury is shown to have been under
the management and control of the defendant." Id. (citing Haddock, 793 S.W.2d at
950).

 Even if the doctrine of res ipsa loquitur applies to Marroquin's claim, he would
still be required to file an expert report under section 74.351. See id. While section
74.201 allows for the applicability of res ipsa loquitur, it is not an exception to section
74.351's expert report requirement. Id. (citing Hector, 175 S.W.3d at 838). (5)
 Res
ipsa loquitur is an evidentiary rule. Id. at 256. In contrast, section 74.351's expert
report requirement establishes a threshold requirement which a claimant must meet
to continue a lawsuit; "it does not establish a requirement for recovery." Id. (citing
Hector, 175 S.W.3d at 838 (quoting Murphy v. Russell, 167 S.W.3d 835, 838 (Tex.
2005)).

It may be that once discovery is complete and the case is tried, there is
no need for expert testimony. . . . But the Legislature envisioned that
discovery and the ultimate determination of what issues are submitted to
the factfinder should not go forward unless at least one expert has
examined the case and opined as to the applicable standard of care, that
it was breached, and that there is a causal relationship between the
failure to meet the standard of care and the injury, harm, or damages
claimed. 


See Hector, 175 S.W.3d at 838 (quoting Murphy, 167 S.W.3d at 838) (alteration in
original)). Thus, because res ipsa is an evidentiary rule, while the expert report is a
threshold requirement to bringing a lawsuit, we conclude that the Legislature did not
intend for section 74.201 to eliminate the procedural requirement of an expert report
at the commencement of litigation. Garcia, 198 S.W.3d at 256 (citing Hector, 175
S.W.3d at 838).

 Even if the doctrine of res ipsa constituted an exception to the expert report
requirement, Marroquin still needed an expert report to prove causation. Id. The
Texas Supreme Court has noted that res ipsa loquitur is generally inapplicable in
medical malpractice cases, but it explained that res ipsa loquitur has been applied
when "the nature of the alleged malpractice and injuries are plainly within the common
knowledge of laymen, requiring no expert testimony." Id. (citing Haddock, 793
S.W.2d at 951; Hector, 175 S.W.3d at 837). According to the court, examples of
such common knowledge include "negligence in the use of mechanical instruments,
operating on the wrong portion of the body, or leaving surgical instruments or sponges
within the body." Haddock, 793 S.W.2d at 951. Marroquin's claim falls into the last
category described by the supreme court. Thus, "res ipsa loquitur, an evidentiary rule,
would allow a jury to infer breach of the standard of care." Garcia, 198 S.W.3d at
256. 

 However, "even if res ipsa loquitur allows for a jury to infer breach, an expert
report would still be required with regard to causation." Id. (citing Vick, 2005 Tex.
App. LEXIS 8196, at **3-4; Hector, 175 S.W.3d at 839). In his response, Marroquin
claimed, "Expert testimony in [this] case is not essential to the determination of an
obvious fact." While we may agree that leaving a sponge inside a body is within the
knowledge of a common layperson, "what the necessary treatment and the damages
resulting from them are not." Id. (emphasis original). Therefore, an expert report is
still needed to show causation. Accordingly, we sustain Dr. Haddad and McAllen
Medical's issue. 

VI. Conclusion

 Although we have sustained the issues raised on appeal, we are compelled to
follow our own precedent, and we conclude that it would be inappropriate to dismiss
Marroquin's claims with prejudice, as requested by appellants. See Valley Bapt. Med.
Ctr. v. Azua, 198 S.W.3d 810, 815 (Tex. App.-Corpus Christi 2006, no pet.); Valley
Baptist Med. Ctr. v. Gonzales, No. 13-06-371-CV, 2007 Tex. App. LEXIS 996, at
**11-12 (Tex. App.-Corpus Christi 2007, no pet.) (citing Azua, 198 S.W.3d at 815;
Longino v. Crosswhite, 183 S.W.3d 913, 918 n.2 (Tex. App.-Texarkana 2006, no
pet.)). The report is deficient, but it was timely filed. The MLIIA specifically provides
that the trial court has discretion to grant one 30-day extension to cure deficiencies
in a timely-filed expert report. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c)
(Vernon 2007). In his response to the motions filed by Dr. Haddad and McAllen
Medical, Marroquin defended the adequacy of the expert report, but he also requested
a 30-day extension to cure any deficiencies found by the trial court. See id. Having
concluded that the report is deficient, we further conclude that it is appropriate for the
trial court to determine whether Marroquin should be granted a 30-day extension to
cure the deficiencies. See Azua, 198 S.W.3d at 815; Longino, 183 S.W.3d at 918
n.2.

 Accordingly, the case is reversed and the cause remanded for further
proceedings consistent with this opinion. 

 

 __________________________ 

 DORI CONTRERAS GARZA,

 Justice


Memorandum Opinion delivered and 

filed this the 29th day of August, 2007.

1. Section 74.351(r)(6) states:


"Expert report" means a written report by an expert that provides a fair summary of the
expert's opinions as of the date of the report regarding applicable standards of care, the
manner in which the care rendered by the physician or health care provider failed to meet the
standards, and the causal relationship between the failure and the injury, harm, or damages
claimed.


Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6) (Vernon Supp. 2006). 
2. The parties do not dispute Dr. Camacho's qualification to render an opinion.
3. During the hearing on the motions to dismiss, the trial court engaged in the following colloquy with 
counsel for Dr. Haddad:


Counsel: [T]he whole purpose of this expert's report is to -to allow the Court, Your
Honor, to determine whether or not this is a valid claim. In other words, are
we trying to get rid of a frivolous lawsuit.


Trial Court: And you're saying - you're simply saying if there is a sponge left, it's not
adequate?


 . . . .


Trial Court: Is that what you are seriously telling me? 


The motions to dismiss were denied immediately after this colloquy.
4. Appellee made this argument before the trial court. However, he did not file an appellate brief in
response to Dr. Haddad's and McAllen Medical's appeal. 
5. Section 74.201 provides, "The common law doctrine of res ipsa loquitur shall only apply to health care
liability claims against health care providers or physicians in those cases to which it has been applied by the
appellate courts of this state as of August 29, 1977." Tex. Civ. Prac. & Rem. Code Ann. § 74.201 (Vernon
2005).