**Reversed and Remanded and Opinion filed June 7, 2012.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-11-00814-CV

---

### ANIL K. SINHA, MD, Appellant

### V.

### ROXANNE THURSTON AND JAMES THURSTON, Appellees

---

**On Appeal from the 149th District Court
Brazoria County, Texas
Trial Court Cause No. 62523**

---

## O P I N I O N

Anil K. Sinha, M.D. brings this interlocutory appeal from the trial court's denial of his motion to dismiss a medical malpractice lawsuit filed against him. Appellees Roxanne Thurston and James Thurston sued Sinha and others alleging Roxanne suffered serious injuries while in their care. Sinha moved to dismiss based upon the Thurstons' alleged failure to timely file a preliminary expert report implicating Sinha's conduct. The trial court denied the motion. We reverse and remand for entry of an order dismissing the Thurstons' claims against Sinha as well as other appropriate proceedings.

## *Background*

In their original petition, filed March 14, 2011, the Thurstons alleged that Roxanne suffered serious injuries because Dr. Sinha and Dr. Adam Corley administered morphine to her during her hospitalization at Brazosport Hospital. Sinha, Corley, and Brazosport Regional Health System were all named as defendants in the petition. Attached to the petition, the Thurstons submitted a letter from Peter E. Erickson, M.D. as a preliminary expert report required under section 74.351 of the Medical Liability Act. *See* Tex. Civ. Prac & Rem. Code § 74.351. This letter stated in full:

> I have reviewed the medical records, made available to me, covering the time that Roxanne Thurston was hospitalized at Brazosport Regional Health System and my medical records of Roxanne Thurston kept as a course of our physician-patient relationship.
>
> Mrs. Thurston's documented allergies and intolerance to morphine and/or derivatives thereof and the fact that, notwithstanding, she was administered morphine while in the care of **Dr. Corley and Brazosport** Regional Health System, and consequently her severe reaction to the same, causing cardiac arrhythmia, loss of consciousness, a CODE BLUE necessitating resuscitation, are the direct cause of the anoxia to her brain.
>
> The above anoxia to her brain and neuronal damage has rendered Mrs. Thurston unable to hold down a job after the above insult w[h]ereas she states that she had always been able to hold down a job prior to the accident. This unemployability, in her words, is due to "no longer having an adequate memory, becoming very anxious and cannot carry on a conversation because she cannot find the words or complete sentences." On our metabolic screening questionnaire Mrs. Thurston admitted to having: headaches, faintness, dizziness, apathy, lethargy, mood swings, anxiety, fear, nervousness, anger, irritability, depression, poor memory, confusion, poor comprehension, poor concentration, poor physical coordination, difficulty in making decisions, stuttering or stammering, learning disabilities and other maladies.
>
> It is my professional medical opinion that the above current cognitive dysfunction of Mrs. Thurston is the direct result of the above morphine insult/code blue/anoxia to her brain. (Emphasis added.)

In the letter, Erickson clearly mentions only Corley and Brazosport and makes no reference to Sinha.

When Corley and Brazosport objected to Erickson's report as inadequate, the Thurstons submitted an amended report, on May 25, 2011[1], in the form of an affidavit by Erickson. This affidavit reads in relevant part as follows:

3. I have reviewed **the medical records (attached as Exhibit "B")** made available to me, covering the time that Roxanne Thurston was hospitalized at Brazosport Regional Health System and my medical records of Roxanne Thurston kept as a course of our physician-patient relationship.

4. I am familiar with the applicable standards of care concerning not giving morphine to a patient who has a documented intolerance of allergy to such. I believe that standard of care [sic] was not met by **the doctors and medical care providers** in this case.

5. Mrs. Thurston's documented allergies and intolerance to morphine and/or derivatives thereof and the fact that, notwithstanding, she was administered morphine while in the care of **Dr. Corley and Brazosport** Regional Health System; and consequently her severe reaction to the same, causing cardiac arrhythmia, loss of consciousness, a CODE BLUE necessitating resuscitation, are the direct cause of the anoxia to her brain. This is based on reasonable medical probability.

6. The above anoxia to her brain and neuronal damage has rendered Mrs. Thurston unable to hold down a job after the above insult whereas she states that she had always been able to hold down a job prior to the accident. This unemployability, in her words, is due to "no longer having an adequate memory, becoming very anxious and cannot carry on a conversation because she cannot find the words or complete sentences." On our metabolic screening questionnaire Mrs. Thurston admitted to having: headaches, faintness, dizziness, apathy, lethargy, mood swings. anxiety, fear, nervousness, anger, irritability, depression, poor memory, confusion, poor comprehension, poor concentration, poor physical coordination, difficulty in making decisions, stuttering or stammering, learning disabilities and other maladies.

7. I reserve the right to amend the opinions in this report upon being furnished new or different information.

8. For all of the above stated reasons it is my medical opinion, based on documentation provided, that the standard of care was not met by Dr. **Corley and Brazosport** Regional Health System **and/or his staff/it's staff** [sic] and in my professional medical opinion that the above current cognitive dysfunction of Mrs. Thurston is the direct result of the above

---

[1] This report was filed within 120 days after the plaintiffs' original petition was filed.

morphine insult/code blue/anoxia to her brain.  (Emphasis added.)

While Erickson references "doctors and medical care providers" in his affidavit, he again does not mention Sinha by name or by explicit reference.  Furthermore, while Erickson states that medical records were attached as exhibit "B" to the affidavit, in the record before us, the affidavit does not have any exhibits attached.  On May 31, 2011, Sinha's attorney sent a letter to the Thurstons' attorney, complaining that the exhibit mentioned in Erickson's affidavit was not received.

Corley was subsequently nonsuited, apparently because it was determined that he had no role in administering morphine to Roxanne.[2]  Brazosport filed objections to the amended expert report on June 16, 2011, and a motion to dismiss on July 14 for failure to file a valid expert report.  On July 19, 2011, Sinha filed his motion to dismiss, arguing principally that the expert report failed to implicate his conduct.  In a response to Sinha's motion, the Thurstons stated that medical records provided by Brazosport indicated Sinha was her attending physician when she was admitted to the hospital, but no medical reports were attached to the response.

A hearing was scheduled on Sinha's motion to dismiss for August 9, 2011, but the record does not contain a transcript for any hearing occurring on that day.  On August 10, 2011,[3] the Thurstons filed a "Supplemental Post-Hearing Brief," which begins, "Pursuant to this Court's request for Plaintiffs' Amended Affidavit exhibits, Plaintiffs' counsel has attached . . . the relevant medical records given to us by the Brazosport Regional Health System (Exhibit B)."  Attached to that document are medical records concerning Roxanne's treatment at Brazosport, including references to Sinha as her attending physician and Corley as her admitting physician.  The records also contain references to other doctors and nurses involved in Roxanne's treatment.  This is the only place in the appellate record where medical records appear.

---

[2] In an "Agreed Motion to Nonsuit," it states that Corley "absolutely did not administer any morphine to ROXANNE THURSTON at any time during her stay at Brazosport."

[3] The Brief and attachments were filed more than 120 days after the plaintiffs' original petition was filed.

4

In a response to the Post-Hearing Brief, Sinha argued that "[a]s discussed at the hearing" the medical records were not timely served, having not been provided until August 3, 2011. On that basis, Sinha requested that the court not consider the records. Sinha further argued that even if the records were timely served, review of the expert report is limited to the "four corners" of the report itself and neither the original nor the amended report implicates Sinha's conduct.

The trial court denied Sinha's motion to dismiss. However, the court also held that the report was inadequate and granted the Thurstons 30 days to file an amended report. The Thurstons filed an amended report on September 8, 2011, again in the form of an affidavit by Erickson. In this affidavit, Erickson expressly implicated Sinha's conduct in the administration of morphine to Roxanne. Sinha filed a notice of interlocutory appeal from the denial of its motion to dismiss.

### Governing Law

The Medical Liability Act entitles a defendant to dismissal of a health care liability claim if he is not served with an expert report showing that the claim has merit within 120 days of the date suit was filed. Tex. Civ. Prac. & Rem. Code § 74.351(b); *Scoresby v. Santillan*, 346 S.W.3d 546, 549 (Tex. 2011). The trial court's refusal to dismiss may be immediately appealed. Tex. Civ. Prac. & Rem. Code § 51.014(a)(9); *Scoresby*, 346 S.W.3d at 549. We review a denial of a motion to dismiss for an abuse of discretion. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). A trial court abuses its discretion if it acts in an unreasonable or arbitrary manner or without reference to any guiding rules or principles. *Larson v. Downing*, 197 S.W.3d 303, 304–05 (Tex. 2006) (per curiam).

The Act specifies the requirements for an adequate report and mandates "an objective good faith effort to comply" with the requirements. Tex. Civ. Prac. & Rem. Code § 74.351(l), (r)(6); *Scoresby*, 346 S.W.3d at 549. It also authorizes a trial court to give a plaintiff who meets the 120–day deadline an additional 30 days to cure any deficiencies in the report. Tex. Civ. Prac. & Rem. Code § 74.351(c); *Scoresby*, 346

S.W.3d at 549. The trial court should err on the side of granting the extension and must grant it if the deficiencies are curable. *Scoresby*, 346 S.W.3d at 549. However, if no report is served as to a particular defendant by the 120-day deadline, dismissal is mandatory and a trial court does not have the discretion to authorize a 30-day extension. Tex. Civ. Prac. & Rem. Code § 74.351 (b)[4]; *Scoresby*, 346 S.W.3d at 553-54.

When determining if a good faith effort has been made, the trial court is limited to the four corners of the report and may not consider extrinsic evidence. *See Jelinek*, 328 S.W.3d at 539; *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875, 878 (Tex. 2001). The expert must demonstrate in the report that he or she is qualified to provide an acceptable report and must give a fair summary of his or her opinions regarding the standard of care, the manner in which the standard was breached, and the causal relationship between the breach and the alleged injury. *See* Tex. Civ. Prac. & Rem. Code § 74.351(r)(5)(B) and (r)(6); *Palacios*, 46 S.W.3d at 879. Moreover, the expert must incorporate sufficient information into the report to inform the defendant of the specific conduct being called into question and provide a basis for the trial court to conclude the claims have merit. *Kingwood Pines Hosp., LLC v. Gomez*, 362 S.W.3d 740, 745 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

## *Analysis*

In *Scoresby*, the Texas Supreme Court urged leniency in determining whether a report had been filed by the 120-day deadline, but it also held that to be a report as to a

---

[4] Section 74.351(b) provides that

> [i]f, as to a defendant . . . , an expert report has not been served [by the deadline], the court, on the motion of the [defendant], shall, subject to Subsection (c), enter an order that:
>> (1) awards [the defendant] reasonable attorney's fees and costs of court . . . ; and
>> (2) dismisses the claim with respect to the [defendant] with prejudice to the refiling of the claim.

Tex. Civ. Prac. & Rem. Code § 74.351(b).

particular defendant, a document must at a minimum contain the opinion of an individual with expertise that the claim has merit and implicate the defendant's conduct. 346 S.W.3d at 557.[5] As detailed above, Sinha premised his motion to dismiss on the argument that although the Thurstons filed certain documents within 120 days of filing suit, neither Erickson's initial letter nor his subsequent affidavit implicated Sinha's conduct. To be a report as to a particular defendant, there is no requirement that a document refer to the defendant by name, so long as it implicates the defendant's conduct. *Troeger v. Myklebust*, 274 S.W.3d 104, 110 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (citing *Ogletree v. Matthews*, 262 S.W.3d 316, 321-22 (Tex. 2007)). A report served in a medical liability lawsuit does not implicate a particular health care provider's conduct merely because the provider is a defendant in the lawsuit. *Id.*

Here, Erickson's initial letter, filed with the original petition, does not mention Sinha by name and does not suggest that there were any responsible parties other than Dr. Corley and Brazosport, which are addressed by name in the report. In his subsequent affidavit, Erickson again names only Corley and Brazosport and does not use Sinha's name or otherwise specifically refer to him. At one point in the affidavit, Erickson uses the phrase "by the doctors and medical care providers in this case," and at another he

_____

[5] The Thurstons initially assert that we are without jurisdiction to consider the merits of Sinha's appeal because there is no interlocutory appeal from the trial court's grant of a 30-day extension to cure deficiencies in a report, citing *Scoresby*, 346 S.W.3d at 557. However, the court in *Scoresby* acknowledged that the granting of an extension when no report has been filed in regards to a particular defendant does not preclude that defendant from immediately appealing the denial of his or her motion to dismiss. *Id.* at 553-56; *see also id.* at 557 ("We conclude that a thirty-day extension to cure deficiencies in an expert report may be granted if the report is served by the statutory deadline, if it contains the opinion of an individual with expertise that the claim has merit, *and if the defendant's conduct is implicated.*") (emphasis added). As is explained in the text of this opinion, Sinha's complaint is that no expert report was timely filed implicating his conduct; thus, the grant of the 30-day extension does not deprive this court of jurisdiction.

The Thurstons further allege that Sinha's objections to Erickson's first two reports were not timely because they were not filed within 21 days as required by section 74.351(a). Tex. Civ. Prac. & Rem. Code § 74.351(a). Sinha, however, did not file objections to Erickson's report; Sinha filed a motion to dismiss for failure to file an expert report implicating his conduct. Such motion to dismiss cannot be filed before 120 days after the filing of the lawsuit and thus would not be waived because not filed within 21 days. *See id.* § 74.351(b); *Rivenes v. Holden*, 257 S.W.3d 332, 338 (Tex. App.—Houston [14th Dist.] May 8, 2008, pet. denied) ("If the expert report does not address appellant, the section 74.351 time requirements do not apply, and appellant can object any time after the 120–day time period.").

7

references "Corley and Brazosport . . . and/or his staff it's staff [sic]." However, these ambiguous phrases do not implicate Sinha or any other care provider beyond Corley and Brazosport. Consequently, these documents do not implicate Sinha's conduct and constitute no report as to him. *See Bogar v. Esparza*, 257 S.W.3d 354, 364 (Tex. App.—Austin 2008, no pet.) ("[W]here a defendant is not identified at least in some manner within the 'four corners' of the report, the report is, for that reason alone, deficient as to that defendant because it would require the reader to infer or make an educated guess as to whose actions the expert is complaining."); *Rivenes v. Holden*, 257 S.W.3d 332, 338 (Tex. App.—Houston [14th Dist.] May 8, 2008, pet. denied) (holding report discussing conduct of co-defendant physician, hospital, and unidentified "emergency room staff" was no report as to appellant); *Apodaca v. Russo*, 228 S.W.3d 252, 257 (Tex. App.—Austin 2007, no pet.) (holding report which referred to other health care providers but did not mention sole defendant or discuss how the defendant breached the standard of care or caused injury or damages was no report as to defendant); *Garcia v. Marichalar*, 198 S.W.3d 250, 252 (Tex. App.—San Antonio 2006, no pet.) ("[T]hat report, which focused on the acts committed by other defendants, did not mention Garcia at all.").

In their response to the motion to dismiss, the Thurstons directed the court to medical records provided by Brazosport, stating that the records show Sinha listed as Roxanne's attending physician. However, it is well settled that a trial court is limited to the "four corners" of the report itself and may not consider extrinsic evidence when determining if a report constitutes a good faith effort. *See Jelinek*, 328 S.W.3d at 539; *Palacios*, 46 S.W.3d at 875, 878; *see also Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 53 (Tex. 2002) ("[T]he only information relevant to whether a report represents a good-faith effort to comply with the statutory requirements is the report itself."); *Rosemond v. Al-Lahiq*, 362 S.W.3d 830, 839 (Tex. App.—Houston [14th Dist.] 2012, pet. filed) (declining to consider alleged fact that particular defendant was the only physician-defendant in the case because it was outside the four corners of the report). In his affidavit, Erickson also mentioned the medical records from Brazosport but only to point

8

out that he had reviewed them, not to suggest that they contained the names of the responsible parties. This general reference to medical records did not implicate Sinha's conduct within the four corners of the report.

Furthermore, even if such a reference could suffice, the appellate record demonstrates that the medical records in question here were not provided by the Thurstons until after the 120-day deadline had passed. They are not included in the record with any filing prior to expiration of the deadline; Sinha's counsel specifically referenced having not received them in two different filings with the court; and when the Thurstons finally did provide the records, it was apparently in response to a request from the court. Furthermore, the Thurstons have not argued on appeal or in the trial court that they timely provided the records.

Because the Thurstons failed to file an expert report implicating Sinha's conduct within 120 days of filing suit, the trial court erred in denying Sinha's motion to dismiss. Accordingly, we sustain Sinha's sole issue, reverse the trial court's order denying the motion to dismiss, and remand for entry of an order dismissing the Thurstons' claims against Sinha along with other appropriate proceedings.[6]


/s/              Martha Hill Jamison
                             Justice


Panel consists of Chief Justice Hedges and Justices Jamison and McCally.

---

[6] In his motion to dismiss, Sinha requested attorney's fees pursuant to section 74.351(b) of the Medical Liability Act. Tex. Civ. Prac. & Rem. Code § 74.351(b)(1). This is a matter the trial court can consider on remand. Brazosport also remains as a defendant in the case below.