

# Fourth Court of Appeals

## San Antonio, Texas

## OPINION

No. 04-13-00790-CV

**CEDAR SENIOR SERVICES, L.P.**,
Appellant

v.

Gloria **NEVAREZ**, Cynthia Cox, Pablo Nevarez, Jr., William Nevarez, Genaro Torres, as next
friend of Genaro Torres, Jr. and Eva Torres, and Pablo Arispe, as next friend of Blake Arispe and
Tristan Arispe as heirs of Pablo Nevarez,
Appellees

From the 38th Judicial District Court, Real County, Texas
Trial Court No. 2013-3075-DC
The Honorable Camile G. Dubose, Judge Presiding

Opinion by:     Catherine Stone, Chief Justice

Sitting:        Catherine Stone, Chief Justice
                Sandee Bryan Marion, Justice
                Rebeca C. Martinez, Justice

Delivered and Filed:  March 19, 2014

AFFIRMED

This appeal of the trial court's denial of the challenge to an expert's report in the underlying

cause should be counted among the "multiple interlocutory appeals, threatening to defeat the

[Medical Liability] Act's purpose by increasing costs and delay that do nothing to advance claim

resolution." *Loaisiga v. Cerda*, 379 S.W.3d 248, 264 (Tex. 2012) (Hecht, J., concurring and

dissenting).  In this appeal, Cedar Senior Services, L.P. contends the trial court erred in denying

its motion to dismiss the claims against it because the expert report did not mention Cedar Senior Services by name. We reject this contention and affirm the trial court's order.

## BACKGROUND

Pablo Nevarez was a patient at a health care facility known as Cedar Hills Geriatric Center from April 26, 2012 to June 18, 2012. On January 17, 2013, appellees filed a lawsuit against Camp Wood SNF, LLC d/b/a Cedar Hills Geriatric Center alleging that breaches in the applicable standards of care by the facility and its staff caused Nevarez to develop severe pressure ulcers and dehydration.

By the time the appellees filed their second amended original petition on May 17, 2013, appellees had discovered that Camp Wood acquired the facility from Cedar Senior Services on May 1, 2012. Accordingly, the appellees amended their petition to add Cedar Senior Services as an additional defendant and alleged, "The Defendants are the past and current owners of this facility." The facility was identified as Cedar Hills Geriatric Center. The petition continued to allege that breaches in the applicable standards of care by the facility and its staff caused Nevarez's injuries.

The appellees timely served the same expert report on Cedar Senior Services as it previously had served on Camp Wood. The report is a twelve-page, single-spaced report detailing the expert's opinion as to the multiple breaches of the applicable standards of care by "Cedar Hills Geriatric Center" and its staff which were a proximate cause of Nevarez's injuries. The report identifies "Cedar Hills Geriatric Center" as the facility to which Nevarez was transferred on April 26, 2012.

Cedar Senior Services filed its motion to dismiss after the appellees amended their petition, identifying it as the former owner of the facility, and after Cedar Senior Services had been served

with the afore-described expert report. The trial court denied the motion, and Cedar Senior Services appeals.

## DISCUSSION

In this case, Cedar Senior Services contends that the trial court erred in denying its motion to dismiss because the expert report does not refer to Cedar Senior Services by name. We review a trial court's ruling on a motion to dismiss under an abuse of discretion standard. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877-78 (Tex. 2001); *Southwest Gen. Hosp., L.P. v. Gomez*, 357 S.W.3d 109, 111 (Tex. App.—San Antonio 2011, no pet.).

"A valid expert report has three elements: it must fairly summarize the applicable standard of care; it must explain how a physician or health care provider failed to meet the standard; and it must establish the causal relationship between the failure and the harm alleged." *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 630 (Tex. 2013). In this case, Cedar Senior Services argues that the report fails to explain how it failed to meet the applicable standard of care because the report does not refer to Cedar Senior Services by name. In support of this contention, Cedar Senior Services cites numerous cases in which an expert report failed to mention one of several health care providers who were sued. *See, e.g., Sinha v. Thurston*, 373 S.W.3d 795, 800 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (involving suit against hospital and two doctors where only hospital and one doctor are mentioned in expert report); *Rivenes v. Holden*, 257 S.W.3d 332, 338 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (same); *Garcia v. Marichalar*, 198 S.W.3d 250, 253-54 (Tex. App.—San Antonio 2006, no pet.) (involving suit against three doctors, hospital, and two nurses where one doctor is not mentioned in expert report). Unlike those cases, the expert report in the instant case expressly identified the facility Cedar Hills Geriatric Center as the health care provider. Cedar Senior Services contends that Cedar Hills Geriatric Center was an assumed name for Camp Wood; therefore, the report was necessarily referring to Camp Wood. The expert report

does not, however, identify Cedar Hills Geriatric Center as an assumed name for Camp Wood. Instead, the expert report identifies Cedar Hills Geriatric Center as the facility to which Nevarez was transferred after his hospitalization.

The argument being made by Cedar Senior Services is similar to an argument addressed by the Dallas court in *Univ. of Tex. Southwestern Medical Ctr. v. Dale*, 188 S.W.3d 877 (Tex. App.—Dallas 2006, no pet.). In that case, the appellees filed suit against the University of Texas Southwestern Medical Center (UT Southwestern) alleging their minor daughter sustained injuries as a result of the negligence of four UT Southwestern resident physicians. *Id*. at 878. The appellees alleged UT Southwestern was liable for the negligence of the residents. *Id*. UT Southwestern asserted the appellees failed to file an expert report with respect to its actions "because the report did not name 'UT Southwestern'." *Id*. Because the claims against UT Southwestern were based entirely on the actions of the resident physicians, the Dallas court held that "the expert report was not required to mention UT Southwestern by name." *Id*. at 879.

Although the claims in this case are being made directly against Cedar Senior Services, the following analysis of UT Southwestern's position by the court is applicable:

> Presumably, all that UT Southwestern asserts the expert should have included was a statement that the residents were acting in the course and scope of their employment with UT Southwestern. However, we fail to see how a medical expert would be qualified to provide an opinion on this issue.

*Id*. at 879 n. 1. Similarly, in the instant case, "[p]resumably, all that [Cedar Senior Services] asserts the expert should have included was a statement that" it was the former owner of Cedar Hills Geriatric Center, the facility referenced in the report. *Id*. "However, we fail to see how a medical expert would be qualified to provide an opinion on" who owned the facility. *Id*. Although the appellees would be required to prove this ownership in order to prevail on their claims against Cedar Senior Services, that proof is not a required element of an expert report. "To be a report as

to a particular defendant, there is no requirement that a document refer to the defendant by name, so long as it implicates the defendant's conduct." *See Sinha*, 373 S.W.3d at 800. In this case, by implicating the conduct of the facility owned by Cedar Senior Services when Nevarez was admitted to that facility as a patient, the report adequately implicated Cedar Senior Services' conduct.

Cedar Senior Services also contends that the report did not specifically identify any conduct that occurred while it owned the facility. We disagree. The following language from the report indicates that the standard of care was violated from the date of Nevarez's admission, when Cedar Senior Services owned the facility, and continuously throughout his stay:

> The Braden scale inaccurately assessed Mr. Nevarez's risk for developing a pressure ulcer ***on admission***; according to his score he was not at risk of developing a pressure ulcer. The plan of care was for him to receive incontinence care every two hours thus reducing his risk for developing pressure ulcers, to receive adequate nutrition and only required minimum assistance from the staff when transferred. There is no consistent evidence in the records that the plans of care ***were initiated***. There is no evidence in the medical records that that interventions recommended by NPUAP such as a specialty mattress and wheelchair gel cushion ***were initiated***.

(emphasis added). Accordingly, the trial court did not abuse its discretion in denying Cedar Senior Services' motion to dismiss. *See Certified EMS, Inc. v. Potts*, 392 S.W.3d at 630 ("A report need not cover every alleged liability theory to make the defendant aware of the conduct that is at issue.").

## CONCLUSION

The trial court's order is affirmed.

Catherine Stone, Chief Justice