

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00733-CV

David **BENAVIDES**, M.D. and David Benavides, M.D., P.A.,
Appellants

v.

Priscila Calzada **CANTU**,
Appellee

From the 49th Judicial District Court, Webb County, Texas
Trial Court No. 2024-CVB-000675D1
Honorable Jose A. Lopez, Judge Presiding

Opinion by:    Adrian A. Spears II, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Irene Rios, Justice
Adrian A. Spears II, Justice

Delivered and Filed: September 10, 2025

REVERSED AND REMANDED

David Benavides M.D. and David Benavides M.D. P.A. (collectively, "Dr. Benavides") appeal the trial court's order denying their motion to dismiss Priscila Calzada Cantu's health care liability claim against them and granting Cantu a thirty-day extension to serve an amended expert report. Because we conclude the trial court abused its discretion by denying the motion to dismiss, we reverse and remand.

**BACKGROUND**

Cantu sued Dr. Benavides, David Benavides M.D. P.A., Laredo Regional Medical Center L.P. doing business as Doctors Hospital of Laredo, Juan F. Montalvo M.D., and Juan F. Montalvo M.D. P.A., for negligence. Dr. Benavides, an obstetrician, delivered Cantu's baby during a C-section operation at Doctors Hospital of Laredo. Three months after the operation, Cantu developed severe abdominal pain and other symptoms prompting her to seek medical treatment from a different hospital. A CT scan revealed that during the C-section operation a foreign body—gauze or other textile material—was left inside Cantu's abdomen. Cantu underwent two surgeries to remove the foreign object, drain and irrigate her abdomen, and resect perforations of her small intestine.

In her first amended petition, Cantu alleged: "Dr. Benavides, Dr. Montalvo and the staff at Doctors Hospital of Laredo failed to follow long-standing protocols of counting items to be used during the planned surgery prior to commencing the procedure, and recounting all items used after completing the procedure (and before closing the patient's incision) to [e]nsure that no items were left inside of [Cantu's] body. The conduct of Dr. Benavides violated the applicable standard of care, and was a proximate cause of [Cantu's] injuries and damages for which the hospital is liable to [Cantu]." Attached to Cantu's first amended petition was an expert report from Dr. Orlando J. Suris, an obstetrician, stating: "Doctors Hospital of Laredo through its employees, failed to meet the accepted standards of care of a reasonable and prudent healthcare provider by failing to conduct a thorough inspection and count of all surgical items used during the surgery, which would have uncovered the foreign object left inside [Cantu]."

After answering Cantu's suit, Dr. Benavides filed a motion to dismiss under section 74.351(b) of the Texas Civil Practice and Remedies Code, claiming Cantu failed to comply with

Chapter 74's expert report requirement because Dr. Suris's expert report failed to state: (1) the standard of care applicable to Dr. Benavides; (2) how Dr. Benavides breached the applicable standard of care; and (3) the causal relationship between that breach and Cantu's alleged injury, harm, or damages. Dr. Benavides further argued that he was entitled to dismissal because no expert report was served as to him and "[t]he only report served [was] a report addressing the standard of care and proximate cause issues for the defendant Laredo Medical Center." Cantu filed a response, arguing that Dr. Suris's expert report fully satisfied the expert report requirements as to Dr. Benavides.

After a hearing, the trial court found that Dr. Suris's report was inadequate as to Dr. Benavides and granted Cantu a thirty-day extension to amend the report. The trial court also denied Dr. Benavides's motion to dismiss. Dr. Benavides appealed.

### APPELLATE JURISDICTION

As a preliminary matter, we address our jurisdiction over this interlocutory appeal. Section 51.014 of the Texas Civil Practice and Remedies Code provides that "[a] person may appeal from an interlocutory order of a district court . . . that . . . denies all or part of the relief sought by a motion under Section 74.351(b), except that an appeal may not be taken from an order granting an extension under Section 74.351." *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(9). Thus, the granting of an extension to amend a deficient expert report is generally not subject to immediate appellate review. *See id*.

However, the Texas Supreme Court has held that a health care "provider may pursue an interlocutory appeal of the denial of a motion to dismiss when no expert report has been timely served, whether or not the trial court grants an extension of time." *Badiga v. Lopez*, 274 S.W.3d 681, 685 (Tex. 2009); *see Quitman Hosp., L.L.C. v. W.S.*, No. 12-24-00246-CV, 2024 WL

3998789, at *2 (Tex. App.—Tyler Aug. 29, 2024, no pet.) (explaining that whether a court of appeals has jurisdiction depends on whether the expert report is "so deficient as to constitute no report at all, thereby allowing an interlocutory appeal regardless of the trial court's extension"); *Westover Continuing Care Ctr. Ltd. Co. v. Adams*, No. 04-21-00121-CV, 2021 WL 5605286, at * 2 (Tex. App.—San Antonio Dec. 1, 2021, no pet.) (recognizing appellate court has jurisdiction over a combination order denying a motion to dismiss and granting an extension "if the report served was, in legal effect, no report").

One way a healthcare liability claimant can fail to serve an expert report is to serve a report that does not implicate the conduct of the defendant. *Thomas v. Torrez*, 362 S.W.3d 669, 672 (Tex. App.—Houston [14th Dist.] 2011, pet. dism'd). As discussed in further detail below, we ultimately conclude that Dr. Suris's report fails to implicate Dr. Benavides's conduct and, as a consequence, constitutes "no report" as to him. We, therefore, have jurisdiction over this interlocutory appeal. *See Badiga*, 274 S.W.3d at 685; *Adams*, 2021 WL 5605286, at * 2.

## APPLICABLE LAW AND STANDARD OF REVIEW

"The Texas Medical Liability Act requires healthcare liability claimants to serve a defendant healthcare provider with a timely and adequate expert report." *Walker v. Baptist St. Anthony's Hosp.*, 703 S.W.3d 339, 342 (Tex. 2024) (citing TEX. CIV. PRAC. & REM. CODE § 74.351(a), (l)). Generally, to be timely, an expert report must be served not later than the 120th day after the date each defendant's original answer is filed. TEX. CIV. PRAC. & REM. CODE § 74.351(a). If an expert report is not served because elements of the report are found to be deficient, the trial court may grant one thirty-day extension to the claimant to cure the deficiency. *Id*. § 74.351(c). However, when a healthcare liability claimant fails to serve an expert report in a timely manner, a defendant is entitled to dismissal of the claim with prejudice *Id.* § 74.351(b)(2).

A defendant is entitled to dismissal "only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report provided in Subsection (r)(6)." *Id*. § 74.351(l). Subsection (r)(6) defines "expert report" as "a written report by an expert that provides a fair summary of the expert's opinions . . . regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id*. § 74.351(r)(6). "The report must specifically refer to the defendant and discuss how that defendant breached the applicable standard of care." *Wood v. Tice*, 988 S.W.2d 829, 831 (Tex. App.—San Antonio 1999, pet. denied). A report demonstrates a good-faith effort when it: (1) informs the defendant of the specific conduct called into question, and (2) provides a basis for the trial court to conclude the claims have merit. *Walker*, 703 S.W.3d at 343; *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018).

"Although a report served in a medical liability lawsuit need not identify a defendant by name, the report must implicate a defendant's conduct." *Copley v. Guidry*, No. 09-24-00046-CV, 2025 WL 1074805, at *5 (Tex. App.—Beaumont Apr. 10, 2025, no pet.); *see Cedar Senior Svcs., L.P. v. Nevarez*, 429 S.W.3d 723, 726 (Tex. App.—San Antonio 2014, no pet.) (stating an expert report is sufficient if it implicates the defendant's conduct, whether or not the defendant is named); *Sinha v. Thurston*, 373 S.W.3d 795, 800 Tex. App.—Houston [14th Dist.] 2012, no pet.). ("To be a report as to a particular defendant, there is no requirement that a document refer to the defendant by name, so long as it implicates the defendant's conduct."). An expert report served in a medical liability lawsuit does not implicate a particular health care provider's conduct merely because the provider is a defendant in the lawsuit. *Blevins v. Bishai*, No. 09-16-00071-CV, 2017 WL 1425590, at *10 (Tex. App.—Beaumont Apr. 20, 2017, no pet.).

"When a plaintiff sues more than one defendant, the expert report must set forth the standard of care applicable to each defendant and explain the causal relationship between each defendant's individual acts and the injury." *Id*., at *8 (quoting *Estorque v. Schafer*, 302 S.W.3d 19, 29 (Tex. App.—Fort Worth 2009, no pet.)). "An expert report may not assert that multiple defendants are all negligent for failing to meet the standard of care without providing an explanation of how each defendant specifically breached the standard and how that breach caused or contributed to the cause of injury. Collective assertions of negligence against various defendants are inadequate." *Taylor v. Christus Spohn Health Sys. Corp.*, 169 S.W.3d 241, 244 (Tex. App.—Corpus Christi 2004, no pet.) (internal citations omitted).

Texas intermediate appellate courts, including this court, have held that an expert report that wholly fails to implicate the defendant's conduct constitutes "no report." *See Copley*, 2025 WL 1074805, at *6 (concluding expert's report that did not implicate the conduct of defendant medical providers was not merely defective but constituted "no report" as to them); *Blevins*, 2017 WL 1425590, at *10 (determining an expert report was so deficient it constituted "no report" because the report "wholly fail[ed] to address any manner in which [the defendant] breached the applicable standard of care or caused [the plaintiff's] alleged injuries"); *Garcia v. Maricharlar*, 198 S.W.3d 250, 255 (Tex. App.—San Antonio 2006, no pet.) ("Neither report filed by [plaintiff] discusses how the care rendered by Dr. Garcia failed to meet the applicable standard of care or how Dr. Garcia's failure caused [plaintiff] to suffer injury, harm, or damages.").

"In analyzing a report's sufficiency, courts must consider only the information contained within the four corners of the report." *Bush v. Columbia Med. Ctr. of Arlington Subsidiary, L.P.*, 714 S.W.3d 536, 544 (Tex. 2025) (internal quotation marks omitted). Courts are not permitted to draw inferences from the contents of the expert report. *See Bowie Mem'l Hosp. v. Wright*, 79

S.W.3d 48, 53 (2002); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879-80 (Tex. 2001). We review the trial court's decision to grant or deny a motion to dismiss based on the adequacy of an expert report for an abuse of discretion. *Walker*, 703 S.W.3d at 343. A trial court abuses its discretion when it fails to analyze or apply the law correctly. *In re Kappmeyer*, 668 S.W.3d 651, 655 (Tex. 2023).

## DISCUSSION

In his first issue, Dr. Benavides argues the trial court abused its discretion by denying his motion to dismiss because Dr. Suris's report was so deficient that it constituted "no report" as to him. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(a),(b)(2).

We begin by analyzing the contents of Dr. Suris's report. In the background section of his report, Dr. Suris states that Cantu "presented to Doctors Hospital at 38-4/7 weeks estimated gestational age in labor" and "[a]fter an unremarkable labor, she underwent . . . a C-section," which was "performed by Dr. David Benavides." Dr. Suris's report then states that Cantu delivered "a viable infant" without any "apparent difficulties or complications during the C-section." Next, Dr. Suris's report explains that three months after the C-section operation, Cantu visited another hospital complaining of "left lower quadrant pain," a CT scan revealed the presence of a foreign body in Cantu's abdomen, and Cantu required two surgeries to remove the foreign body and irrigate and drain the affected area.

After explaining Cantu's relevant medical history, Dr. Suris's report devotes several paragraphs to explaining the standard of care, breach, and causation, stating:

> During surgical procedures, it is imperative that all items involved in the procedure, including instruments, sponges, labs, and sharps be counted and accounted for. There is usually a count done at the commencement of the case and a count done at the conclusion of the procedure to ascertain that everything is accounted for. During the C-section the final count status was noted to be correct x3 which was not the case.

> *Doctors Hospital of Laredo through its employees*, failed to meet the accepted standards of care of a reasonable prudent healthcare provider by failing to conduct a thorough inspection and count of all surgical items used during the surgery, which would have uncovered the foreign object left inside the patient. As a consequence of such negligence, she developed adhesions, sepsis, bowel rupture requiring extensive surgeries, physical pain and unnecessary suffering, emotional distress and mental anguish. There was a duty owed to Priscilla Calzada Cantu to do what *a reasonable institution* would have done under the same or similar circumstances. The duty to provide a reasonable standard of care also includes avoiding what *a reasonable institution* would avoid (or not have done) under the same or similar circumstances. This duty was omitted.

> Standards of care are designed to provide general guidelines that help ensure the health, safety, and wellbeing of patients. Had the standards of care been met, then to a reasonable degree of medical probability, Priscilla Calzada Cantu would not suffer all the consequences of that breach and would have avoided further surgeries, ICU care and a lengthy hospitalization.

> It is reasonably foreseeable that leaving gauze intraoperatively would result in complications. Had the standards of care been met by accurate and precise counts, which would have uncovered the foreign object left inside, then to a reasonable degree of medical probability, she would not have suffered the adhesions, sepsis, bowel rupture requiring resection and pain and suffering. It is my opinion that all these consequences were the result of the retained foreign body.

(emphasis added).

As the above-quoted excerpt shows, the part of Dr. Suris's report explaining the standard of care, breach, and causation never mentions Dr. Benavides by name or by position, that is, the physician who performed the C-section operation. Instead, this part of Dr. Suris's report only refers to the conduct of "Doctor's Hospital of Laredo through its employees" and identifies the duties owed to Cantu as the duties "to do what a reasonable *institution* would have done" and to "avoid[] what a reasonable *institution* would avoid . . . under the same or similar circumstances." According to Dr. Suris's report, the hospital "through its employees" failed to properly account for "all items involved in the procedure, including instruments, sponges, labs, and sharps." Dr. Suris specifically notes in this part of his report: "During the C-section the final count status was noted to be correct

x3 which was not the case." Thus, the specific breach identified in Dr. Suris's report is the failure to properly account for the "foreign body" left in Cantu's abdomen and the only conduct addressed in Dr. Suris's report is the conduct of the hospital "through its employees" and "the institution."

Cantu nevertheless argues that Dr. Suris's use of the phrase "Doctors Hospital of Laredo through its employees" is broad enough to encompass Dr. Benavides's conduct because the word "employees" should be given its "common" rather than its "legal" meaning. Cantu further argues that this phrase necessarily includes Benavides because he was the surgeon who performed the surgery. We disagree. In deciding whether a physician or healthcare provider's conduct is implicated in an expert report, courts are precluded "from filling gaps in a report by drawing inferences or guessing as to what the expert likely meant or intended." *Bogar v. Esparza*, 257 S.W.3d 354, 362 (Tex. App.—Austin 2008, no pet.); *see Wright*, 79 S.W.3d at 53 (refusing to draw an inference from statement in expert's report because "the report must include the required information within its four corners"); *Palacios*, 46 S.W.3d at 879-80 (rejecting argument that courts are permitted to draw inferences from statements made in expert report). Accordingly, the law prevents us from inferring that the terms "Doctor's Hospital of Laredo through its employees" and "the institution" as used in Dr. Suris's report mean Dr. Benavides or the physician who performed the C-section operation. *See Bogar*, 257 S.W.3d at 364; *Wright*, 79 S.W.3d at 53; *Palacios*, 46 S.W.3d at 879-80.

Although Dr. Suris's report does mention Dr. Benavides, it only does so once while explaining Cantu's relevant medical history. We conclude that Dr. Suris's single reference to Dr. Benavides in the background section of the report fails to implicate Dr. Benavides's conduct as required by the law. *See Thomas*, 362 S.W.3d at 678 ("We conclude that the passing references to one instance of care rendered by Lambi do not implicate the conduct of Lambi. We base this

conclusion on the lack of any criticism of Lambi's care, any statement that Lambi violated any standard of care, and any statement that she caused harm to Ricardo Torrez.").

An expert report demonstrates "a good faith effort" when it: (1) informs the defendant of the specific conduct called into question, and (2) provides a basis for the trial court to conclude the plaintiff's claims have merit. *Abshire*, 563 S.W.3d at 223. While an expert report need not marshal all the plaintiff's proof, a report that merely states conclusions about the standard of care, breach, and causation is insufficient. *Id*. "To adequately identify the standard of care, an expert report must set forth specific information about what a defendant should have done differently." *Id*. at 226 (internal quotation marks omitted). To satisfy the causation requirement, the expert must explain "how and why" the alleged negligence caused the injury in question. *Id*. at 224. "[T]he expert must explain the basis of his statements and link conclusions to specific facts." *Id*.

Consistent with these tenets, courts have held that when a plaintiff sues more than one defendant, the expert report must set forth the standard of care applicable to each defendant and explain the causal relationship between each defendant's individual acts and the plaintiff's injury. *Copley*, 2025 WL 1074805, at \*6; *Blevins*, 2017 WL 1425590, at \*10. For example, in *Rivenes v. Holden*, the Fourteenth Court of Appeals held the trial court abused its discretion by denying the physician's motion to dismiss because the plaintiff's expert report failed to implicate a defendant physician's conduct. 257 S.W.3d 332, 339 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). In *Rivenes*, an emergency room physician examined the plaintiff, diagnosed him with a central retinal artery occlusion, and referred him to an ophthalmologist on call at the hospital that night. *Id*. at 334. After a more than one-hour delay, the ophthalmologist saw the plaintiff and came up with a treatment plan, but the plaintiff did not receive the prescribed medicine until about two hours later. *Id*. The plaintiff, who permanently lost complete vision in his left eye, sued the

emergency room physician, the ophthalmologist, and the hospital for negligence. *Id*. The plaintiff's expert report addressed the plaintiff's complaints regarding the conduct of the ophthalmologist, the hospital, and the emergency room staff, but it did not address the plaintiff's complaint regarding the conduct of the emergency room physician. *Id*. at 338. The court of appeals noted that the expert report failed to explain how any of the expert's statements applied to the emergency room physician and it failed to discuss how the care rendered by the emergency room physician failed to meet the applicable standard of care or how it caused the plaintiff to support to suffer injury, harm, or damages. *Id*. 338-39. "With these deficiencies, [the expert's] report cannot be construed to inform [the emergency room physician] (1) of the applicable standard of care; (2) how he performed negligently; or (3) how his specific negligence caused [the plaintiff's] damages." *Id*. at 339. The court added that although the expert "may have considered [the emergency room physician] part of the emergency staff, we cannot tell that from the report. We also cannot tell from the report how many emergency room 'staffers' there were." *Id*. at 338 n.6. Ultimately, the court of appeals concluded that the expert report "cannot be considered merely deficient as to [the emergency room physician]; it is, in fact, no report at all as to him." *Id*. at 338.

Similarly, Dr. Suris's report does not identify the standard of care applicable to Dr. Benavides. *See Blevins*, 2017 WL 1425590, at *8 (noting when a plaintiff sues more than one defendant, the expert report must set forth the standard of care applicable to each defendant). Furthermore, Dr. Suris's report does not explain how Dr. Benavides breached the applicable standard of care, nor does it explain the causal relationship between Dr. Benavides's individual acts and Cantu's injuries. *See id*. (noting when a plaintiff sues more than one defendant, the expert report must explain the causal relationship between each defendant's individual acts and the plaintiff's injury); *Taylor*, 169 S.W.3d at 244 (stating "[c]ollective assertions of negligence against

various defendants are inadequate"). Dr. Suris's report wholly fails to connect Dr. Benavides to the standard of care and to explain the causal relationship between Dr. Benavides's individual acts and Cantu's injuries. *See Taylor*, 169 S.W.3d at 244 (providing that expert report must explain how each defendant specifically breached the standard of care and how that breach caused or contributed to the cause of injury); *Wood*, 988 S.W.2d at 831 (providing expert report "must specifically refer to the defendant and discuss how that defendant breached the applicable standard of care"). After reviewing the four corners of Dr. Suris's report, we conclude that it fails to implicate Dr. Benavides's conduct. *See Blevins*, 2017 WL 1425590, at \*10 (determining expert report that did not address any manner in which defendant breached the applicable standard of care or caused plaintiff's alleged injuries failed to implicate defendant's conduct); *Maricharlar*, 198 S.W.3d at 255 (concluding defendant doctor's conduct was not implicated when expert report did not discuss how his care failed to meet standard of care and how his failure to meet standard of care caused the plaintiff to suffer injury, harm, or damages).

Because nothing in Dr. Suris's report connects Benavides to the applicable standard of care and the breach that allegedly injured Cantu, it does not "represent an objective good faith effort" to comply with the statutory definition of an expert report. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(l),(r)(6). Additionally, because Dr. Suris's report does not represent a good faith effort to comply with the expert report requirement, the trial court was required to grant the motion to dismiss. *See id*. 74.351(b)(2) (providing when expert report is not served in a timely manner, defendant is entitled to dismissal with prejudice).

Finally, Cantu invokes the doctrine of res ipsa loquitur to argue that even if Dr. Suris's report fails to implicate Dr. Benavides's conduct, Dr. Benavides's breach of the standard of care may be inferred from the circumstances of the case. In a case involving strikingly similar facts—

a negligence suit complaining of a sponge left in a surgical patient—we stated that res ipsa loquitur "is an evidentiary rule by which negligence may be inferred by a jury." *Garcia*, 198 S.W.2d at 255. We held that even when the doctrine of res ipsa loquitur applies to a plaintiff's healthcare liability claim, it does not absolve the plaintiff from section 74.351's expert report requirement. *Id*. ("Even if the doctrine of res ipsa loquitur applies to [the plaintiff's] claim, she would still be required to file an expert report under section 74.351."); s*ee Hector v. Christus Health Gulf Coast*, 175 S.W.3d 832, 837 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (stating that res ipsa loquitur "might preclude the need for expert testimony" "at the trial stage," but rejecting idea "that the Legislature intended for it to eliminate the procedural requirement of an expert report at the commencement of litigation").

We hold the expert report in this case fails to implicate Dr. Benavides's conduct and, therefore, it constitutes "no report" as to him. *See Copley*, 2025 WL 1074805, at *6 (concluding expert report that did not implicate conduct of defendant medical providers constituted "no report" as to them); *Sinha*, 373 S.W.3d at 800 (holding expert reports that did not implicate doctor's conduct were "no report as to him"). Because Cantu failed to serve an expert report implicating Dr. Benavides's conduct within 120 days of the filing of his answer, the trial court abused its discretion by denying the motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(a),(b). We sustain Dr. Benavides's first issue.[1]

## CONCLUSION

We reverse the trial court's order denying the motion to dismiss and remand this case to the trial court for entry of an order: (1) dismissing, with prejudice, Cantu's claims against David Benavides M.D. and David Benavides M.D. P.A.; and (2) awarding them reasonable attorney's

---

[1]Having sustained Dr. Benavides's first issue, we need not address his second issue. *See* TEX. R. APP. P. 47.1.

fees and court costs. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(b) (requiring the trial court to dismiss the claim with prejudice and award the affected physician reasonable attorney's fees and costs of court when an expert report has not been timely served).

Adrian A. Spears II, Justice